# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

### NO. 03-10-00784-CV

**Michael D. Lillis, Appellant**

**v.**

**Kachina Pipeline Company, Inc., Appellee**

**FROM THE DISTRICT COURT OF CONCHO COUNTY, 119TH JUDICIAL DISTRICT
NO. DAC-08-03967, HONORABLE BEN WOODWARD, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Our opinion and judgment issued on January 4, 2013, are withdrawn, and the following opinion is substituted.

Michael Lillis entered into an agreement with Kachina Pipeline Company, Inc. ("Kachina"), under which he agreed to sell to Kachina the gas produced from his wells. After performing under the agreement for several years, Lillis sued Kachina and alleged that Kachina breached their agreement by impermissibly charging him costs that were not authorized under the agreement. When pursuing this claim, Lillis sought an accounting of the allegedly improper costs that Kachina had charged and requested various declarations, including a declaration that the costs were not authorized. Lillis also argued that Kachina had committed fraud. In response, Kachina filed a countersuit and argued that Lillis had breached their agreement by entering into a

contract with another company regarding the sale of his gas. As part of its suit, Kachina sought various declarations regarding the agreement between the parties and a declaration that the disputed charges were authorized by the agreement. Both parties moved for partial summary judgment, and the district court denied Lillis's motion but granted Kachina's motion and issued Kachina's requested declarations. After making its ruling, the district court issued a final judgment incorporating its summary-judgment rulings and awarding Kachina attorney's fees and expenses. Lillis appeals the judgment of the district court. We will affirm in part and reverse and remand in part.

**BACKGROUND**

Lillis is a natural gas producer, and Kachina owns a natural gas pipeline. During its course of business, Kachina receives gas from different producers and then transfers the gas to a processing plant. Although Lillis and Kachina had a preexisting business relationship, in 2005 they entered into a new written contract under which Kachina agreed to purchase all of the gas produced from Lillis's wells. Specifically, the contract provides that Lillis will deliver his gas to Kachina and that Kachina will receive and purchase the gas. Under the contract, the parties agreed that the amount of gas attributable to Lillis "shall be the ratio that the volume of gas delivered by [Lillis] to [Kachina] . . . bears to the total volume of gas . . . delivered by all Sellers." Further, the contract specifically defines Lillis as the "Seller" and Kachina as the "Buyer."

The contract also details the term of the agreement. In particular, the contract states that it is effective until May 31, 2010, but also states that the agreement will "continue from month to month thereafter" unless a notice of termination is given. However, the contract also contains a provision explaining that if the agreement is terminated and if Lillis intends to enter into

2

another agreement with a third party, Lillis is required to inform Kachina of the terms under which it intends to sell the gas to the other party and that Kachina "shall have the option" to elect to continue purchasing gas under the proposed financial terms between Lillis and the other party. In addition, the contract specifies that no "amendment, modification or alteration of the terms hereof shall be binding unless the same be in writing."

Under the arrangement between Kachina and Lillis, Kachina transferred the gas it obtained from Lillis to the Davis Gas Processing ("Davis Gas") plant. Once the agreement became effective, Kachina sent Lillis monthly payments listing his proportionate share of gas sales that Kachina made to Davis Gas. When Kachina issued the payments, it deducted "Marketing Fees," which were fees for compressing and gathering the gas.

Prior to the end of the initial term, Lillis entered into an agreement with Davis Gas and constructed his own pipeline to directly connect with the Davis Gas plant. Around the same time that Lillis entered into an agreement with Davis Gas, Lillis objected to Kachina charging him compression fees. Essentially, Lillis contended that under the agreement, Kachina may not deduct fees for compression occurring after Lillis delivered the gas to Kachina. Subsequently, Lillis sued Kachina.

In his suit, Lillis asserted that Kachina breached the contract by making "unauthorized charges for compression and deduct[ing] such amounts from the monies Kachina owed Lillis . . . in an amount in excess of $450,000." In addition, Lillis argued that "Kachina has failed and refused to account to [Lillis] for all the income, expenses, and net profits from Lillis' sale of gas to Kachina, and Kachina's resale of such gas to third parties." Consequently, Lillis requested that the district

3

court order an accounting on the matter and order Kachina to pay "the correct amount of the income Kachina has received from the resale of gas to third parties." Lillis also sought a declaration that Kachina breached the contract by improperly deducting compression costs "from the proceeds of gas" that he sold to Kachina, asked the district court to "declare the amount of such improper deductions," and requested reasonable attorney's fees related to the declaratory-judgment action. Furthermore, Lillis alleged a cause of action for fraud arguing that Kachina informed Lillis that it "would release" him from his obligations under the contract knowing "that the representation was false" or made the representation "recklessly without any knowledge of the truth." In addition, Lillis asserted that Kachina "made the representation . . . with the intent that Lillis should act upon the representation, and in fact, Lillis acted in reliance . . . and built a new gas transportation pipeline at a cost in excess of over $660,000." Lillis also requested "all reasonable attorney's fees incurred by Lillis in the prosecution of this suit." Soon after filing suit, Lillis filed a motion for partial summary judgment in which he argued that the costs that Kachina charged "for marketing and/or compression" were not authorized by the contract because the compression did not occur until after Kachina had already obtained title to the gas.

In response, Kachina filed an answer and alleged various counterclaims. In its countersuit, Kachina asserted a breach-of-contract claim arguing that it "has an option to extend the term of the Agreement in accordance with the price terms of any third party offer," that Lillis "received a third party offer from" Davis Gas, that Lillis failed to inform Kachina of the offer, that Lillis entered into a contract with Davis Gas, and that Lillis's breach resulted in Kachina losing income. In addition, Kachina sought declarations that it had "the right to deduct compression

4

charges . . . from [Lillis]'s payments" under the terms of the contract, that "Kachina has option rights to extend the purchase of gas after the initial period . . . and has exercised those rights so that the term . . . has been extended to May 31, 2015," and that the agreement "cannot be amended except in writing." Kachina also requested an award of attorney's fees.

In addition to filing its answer, Kachina filed a no-evidence motion for partial summary judgment. In its motion, Kachina asked the court to conclude that Lillis presented no evidence for his fraud claim. Further, Kachina filed a motion for traditional partial summary judgment. In that motion, Kachina urged the district court to grant summary judgment on its declaratory-judgment action. Specifically, Kachina sought the three declarations listed above.

After reviewing the motions, the district court denied Lillis's motion for summary judgment but granted Kachina's no-evidence motion for partial summary judgment and dismissed Lillis's fraud claim. In addition, the district court granted Kachina's motion for traditional partial summary judgment and issued the following declarations: (1) Kachina "has the right under the 2005 Gas Purchase Agreement to deduct from [Lillis]'s monthly net proceeds compression costs"; (2) Kachina "has duly exercised its option rights under the 2005 Gas Purchase Agreement so that the termination date of the Agreement has been extended to May 31, 2015"; and (3) "[t]he Term provision of the 2005 Gas Purchase Agreement cannot be amended unless done so in writing and signed by both parties."[1] Finally, subsequent to issuing its orders regarding the motions for summary judgment, the district court held a hearing and then issued a final judgment incorporating its rulings

---

[1] We note that Lillis's breach of contract claim and Kachina's first requested declaration were essentially mirror images of one another and that by granting the relief requested by Kachina, the district court necessarily ruled on Lillis's breach claim.

5

on the motions and ordering Lillis to pay $125,000 for "reasonable attorney's fees and expenses" and appellate attorney's fees in the event that the case is appealed to this Court and to the supreme court.

Lillis appeals the judgment of the district court.

## STANDARD OF REVIEW

In this appeal, Lillis appeals the district court's decision to grant Kachina's traditional summary-judgment motion. We "review a trial court's grant of summary judgment de novo." *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). A party moving for summary judgment has the burden of establishing that it is entitled to judgment as a matter of law and that there are no genuine issues of material fact. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985); *see* Tex. R. Civ. P. 166a(c) (setting out circumstances in which summary judgment may be granted). On appeal, we review the record "in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005).

Among other assertions, Lillis challenges the propriety of the declarations issued by the district court. Many of those declarations are constructions of the agreement between the parties. "The construction of an unambiguous contract is a question of law for the court," which we review de novo. *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011). "A contract is not ambiguous simply because the parties disagree over its meaning." *Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009). Rather, a contract is ambiguous only when "its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation." *Heritage Res.,*

6

*Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). "When discerning the contracting parties' intent, courts must examine the entire agreement and give effect to each provision so that none is rendered meaningless." *Tawes*, 340 S.W.3d at 425. When performing this review, no single provision will be given controlling effect; instead, all of the provisions must be considered in light of the whole agreement. *Id.* "In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). Accordingly, we "give contract terms their plain and ordinary meaning unless the instrument indicates the parties intended a different meaning." *Apache Corp.*, 294 S.W.3d at 168.

## DISCUSSION

In his appeal, Lillis raises two issues. In the first issue, Lillis challenges the district court's entry of a final judgment in the case and the three declarations made by the district court. Although Lillis does assert in his first issue that the district court erred by entering a final judgment after granting Kachina's summary judgment because Kachina's motion did not request a disposition on Lillis's accounting claim, Lillis does not challenge the district court's ruling denying his motion for summary judgment. Moreover, when challenging the declarations issued by the district court, Lillis only asks this Court to reverse those declarations. In his second issue, Lillis argues that the attorney's fees and costs awarded by the district court were improper. We will address Lillis's arguments regarding the various declarations first, the entry of a final judgment second, and the attorney's fees and costs last.

**Declarations**

In his first issue, Lillis challenges the declarations that the district court made when it granted Kachina's motion for summary judgment. As mentioned above, the district court declared that "[t]he Term provision of the 2005 Gas Purchase Agreement cannot be amended unless done so in writing and signed by both parties." In his brief, Lillis contends that by asking the district court to issue this declaration, Kachina impermissibly sought an advisory opinion about a hypothetical event because the provision of the agreement setting out the procedure for amending the agreement did not bear upon any dispute between the parties. Accordingly, Lillis insists the district "court thus erred in rendering summary judgment on a ground which lacked the requisite controversy."

Under the declaratory judgment act, "[a] person interested under a . . . written contract . . . may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status, or other legal relations thereunder." *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.004 (West 2008). A declaratory-judgment proceeding is "an additional remedy and does not supplant any existing remedy, but is intended as a speedy and effective remedy for the determination of the rights of the parties when a real controversy has arisen." *Cobb v. Harrington*, 144 Tex. 360, 190 S.W.2d 709, 713 (Tex. 1945). A declaratory-judgment action "is appropriate when a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought." *Texas Health Care v. Seton Health Plan, Inc.*, 94 S.W.3d 841, 846 (Tex. App.—Austin 2002, pet. denied). A declaratory-judgment action may not be used to obtain an advisory opinion. *Transportation Ins. Co. v. WH Cleaners, Inc.*, 372 S.W.3d 223, 227 (Tex. App.—Dallas 2012, no pet.) (explaining that declaratory-judgment action is proper only

8

when justiciable controversy exists).  In other words, the declaratory-judgment statute does not empower courts to comment on "hypothetical or contingent situations, or to determine questions not then essential to the decision of an actual controversy."  *Texas Health Care*, 94 S.W.3d at 846.

For the reasons that follow, we disagree with Lillis.  In response to Lillis's allegations, Kachina counterclaimed and argued that Lillis breached their agreement.  As described earlier, the agreement specifies that no amendment or modification "of the terms hereof shall be binding unless the same be in writing . . . and duly executed by the parties."  In addition, the agreement provides a termination date but explains that it will continue after the termination date unless a notice of termination is given.  Moreover, the agreement also explains that even if the agreement is terminated, Lillis is required to inform Kachina of the terms of any new agreement under which Lillis intended to sell his gas and that Kachina has the option to continue purchasing gas under those financial terms.

In light of the provisions summarized above, Kachina alleged that Lillis breached the agreement by improperly entering into a contract to sell gas directly to Davis Gas prior to the termination of the agreement at issue and by failing to inform Kachina of his intent to enter into an agreement with Davis Gas.  In making these claims, Kachina argued that the agreement specified that any amendment must be in writing and signed by the parties.  In other words, Kachina contended that no oral communication between Kachina and Lillis could have authorized Lillis to enter into an agreement with Davis Gas without complying with the termination provision or providing Kachina with notice regarding the proposed agreement.  Accordingly, Kachina sought a declaration that any amendment to the agreement must be in writing and signed by the parties.

9

That declaration resolves a dispute between the parties relevant to the breach counterclaim and a defense to the counterclaim: whether the terms of the agreement may be modified orally. If the agreement cannot be modified orally, then a conversation between Lillis and Kachina could not have excused noncompliance with the termination and extension provisions. On the other hand, if the agreement could be modified orally, then a conversation in which Kachina agreed to an early termination date and to forgo any extension rights could demonstrate that Lillis's actions did not constitute a breach of the agreement.

For these reasons, we cannot agree with Lillis's assertion that Kachina impermissibly sought an advisory opinion when it sought and received the declaration at issue. Accordingly, we overrule the portion of Lillis's first issue challenging the declaration asserting that amendments to the "Term provision of the" agreement must be in writing.

In this issue, Lillis also challenges the district court's declaration that Kachina had exercised its option rights under the agreement with Lillis "so that the termination date of the agreement has been extended to May 31, 2015." In making this assertion, Lillis contends that the requested declaration is inconsistent with the renewal provision of the contract and urges that the five-year extension was not contemplated by the terms of the agreement.[2] *See Natural Gas*

_____

[2] In its brief, Kachina insists that Lillis waived any challenges to this declaration because he did not present any response to Kachina's request for the declaration made in its motion for summary judgment. However, portions of the requested declaration sought construction of the agreement between Lillis and Kachina, and the construction of a contract is a question of law that we review de novo in light of the entire agreement. *See Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc.*, 297 S.W.3d 248, 252-53 (Tex. 2009). Moreover, Kachina had the burden of establishing its right to the declaration as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). For the reasons discussed above, even ignoring Lillis's assertions on appeal, we would be unable to uphold the declaration at issue.

10

*Clearinghouse v. Midgard Energy Co.*, 113 S.W.3d 400, 407 (Tex. App.—Amarillo 2003, pet. denied) (explaining that courts may not "change the contract merely because we or one of the parties comes to dislike its provisions or thinks that something else is needed").

On the other hand, Kachina insists that the declaration is consistent with the terms of the agreement. As discussed previously, the contract sets out the duration of the "initial period" for the agreement, explains that the agreement may be terminated after the conclusion of the "initial period," and provides that the agreement will continue on a month-to-month basis if it is not terminated. The agreement also details Lillis's obligation to inform Kachina if a third party sought to purchase gas from Lillis after the agreement was terminated as well as Kachina's right to continue purchasing gas from Lillis after the agreement is terminated under the financial terms offered by the third party. Specifically, the provision provides as follows:

> Upon termination or cancellation of this Agreement prior to selling gas to a third party at any time during the term of the leasehold estate, or extension thereof, now owned by [Lillis] . . . , [Lillis] shall give [Kachina] notice of the third party offer under which it proposes to sell the gas. [Kachina] shall have the option for thirty (30) days from such notice to either elect to continue the purchase of gas under the terms of this Agreement with such adjustments in the price hereunder as may be required to yield the same economic benefit to [Lillis], as would be derived from the proposed third party offer or [Kachina] may decline such offer.

In light of this provision, Kachina urges that if Lillis seeks to sell gas to another buyer, the agreement authorizes Kachina to "step into the shoes" of that third-party buyer and continue purchasing gas from Lillis under the terms set forth in a proposed third-party agreement, including the length of the agreement that the third party was willing to agree to.

For the reasons that follow, we believe that the district court's declaration is inconsistent with the terms of the agreement between Lillis and Kachina. Although Kachina correctly

11

points out that the agreement does require Lillis to inform Kachina of its intent to sell gas to a third party after the initial period has concluded and gives Kachina the right to purchase gas under the financial terms of the proposed third-party agreement, that provision only directs that Kachina may continue to purchase gas "with such adjustments in the *price* hereunder as may be required to yield the same economic benefit to" Lillis. (Emphasis added).[3] In other words, although the agreement between Kachina and Lillis does authorize alterations to its terms to account for a proposed third-party agreement, the agreement limits the alterations to changes in the price of gas that is sold and does not authorize the incorporation of a proposed effective term from a third-party agreement. Moreover, the provision also instructs that Kachina may only "continue the purchase of gas under the terms of" the agreement between Lillis and Kachina. The agreement specifies that after the expiration of the initial period, the agreement will "continue [on a] month to month" basis and that after the conclusion of the initial period, the agreement "may be canceled on the first day of any month thereafter by either party, by a thirty (30) day prior written notice." Stated differently, more than just failing to authorize the kind of extension requested by Kachina, the terms of the agreement expressly prohibit the incorporation of a term proposed in a third-party agreement.

Having determined that the contract does not allow for the type of option rights declared by the district court, we need not consider whether the evidence supports the five-year extension declared by the district court. For the reasons previously given, we sustain the portion of Lillis's first issue challenging the declaration stating that the termination date of the agreement between him and Kachina was extended to May 31, 2015.

---

[3] We note that the agreement between the parties provides a detailed payment structure.

12

In his first issue, Lillis also attacks the district court's final declaration. In that declaration, the district court stated that Kachina "has the right under the 2005 Gas Purchase Agreement to deduct from [Lillis]'s monthly net proceeds compression costs." When Kachina sought this declaration, it asked for and was given a very general declaration that it was authorized to deduct compression costs. There is a provision in the agreement that authorizes Kachina to charge compression costs. Accordingly, the declaration issued by the district court would seem to be consistent with the terms of the agreement. However, although the requested declaration was general in nature, the pleadings filed with the district court and the appellate briefing by both parties demonstrate that the desired declaration concerned very specific compression costs.

As mentioned above, Lillis agreed to sell gas to Kachina by transferring the gas to a delivery point on Kachina's pipeline. Early in the business relationship between Lillis and Kachina, Kachina installed various compressors for the purpose of increasing the pressure of the gas that it sold to Davis Gas. According to Kachina, Davis Gas paid a higher price for gas that was delivered at high pressure. The compressors were installed downstream from all of the delivery points where Kachina collected gas from producers, including Lillis's delivery point. On appeal, Lillis contends that although the agreement authorized other deductions, nothing in the agreement authorized deductions for compression costs that occurred after Lillis transferred the gas to Kachina.

As support for the district court's declaration, Kachina points to a portion of a provision entitled "Pressure." The portion relied on provides as follows: "If [Kachina] installs compression to effect delivery of [Lillis]'s gas, [Kachina] will deduct from proceeds payable to [Lillis] hereunder a value equal to [Kachina]'s actual costs to install, repair, maintain and operate

13

compression, plus 20% of such costs to cover management overhead and administration." In light of that provision, Kachina argues that the agreement gave it "the authority to charge Lillis for any compression it installs to deliver his gas" regardless of whether the gas was compressed before or after Lillis transferred the gas to Kachina.[4]

For the reasons that follow, we disagree. The compression provision is located within a section of the contract entitled "MEASUREMENT POINT, DELIVERY POINT, AND PRESSURE." In that section, the agreement specifies that "[Lillis] agrees to deliver and [Kachina] agrees to receive the gas deliverable hereunder at the outlet of [Kachina]'s . . . metering facilities

---

[4] As described earlier, the contract between Kachina and Lillis defined Kachina as the "Buyer" and Lillis as the "Seller." Moreover, the agreement uses the terms Seller and Buyer throughout the various provisions instead of referring to the parties by their names, but we have chosen for ease of reading to substitute the parties names when we quote the agreement. The unaltered compression-cost provision quoted above provides as follows: "If Buyer installs compression to effect delivery of Seller's gas, Buyer will deduct from proceeds payable to Seller hereunder a value equal to Buyer's actual costs to install, repair, maintain and operate compression, plus 20% of such costs to cover management overhead and administration."

In its briefs, Kachina insists that when Lillis argued to the district court that Kachina could not charge the compression costs at issue, Lillis necessarily was arguing that Kachina became a "Seller" of the gas once it obtained custody of the gas and sold the gas to third parties. For that reason, according to Kachina, Lillis insisted that Kachina was not authorized under the contract to charge costs for compression occurring after Kachina took possession of the gas because it was no longer a "Buyer." When arguing that Lillis's construction must fail, Kachina states that the construction is inconsistent with the portion of the agreement specifically defining Kachina as the Buyer and Lillis as the Seller. Moreover, Kachina refers to other provisions of the agreement using the terms Seller and Buyer and argues that a construction under which Kachina is deemed a Seller once the gas is delivered would render those provisions "nonsensical." However, we believe that rather than characterizing Lillis's arguments as asserting that Kachina became the Seller under the agreement once it obtained gas, Lillis's assertions are more fairly viewed as claiming that the compression-cost provision, when read in context with the entire agreement, only authorizes Kachina to charge compression costs that were incurred when transferring gas from Lillis into Kachina's pipeline.

14

to be located at a mutually agreeable point(s) at or near [Lillis]'s well(s)." Further the contract explains that "[s]uch point shall constitute the delivery point for all gas to be delivered hereunder" and that "[t]itle of all gas delivered hereunder shall pass to [Kachina] at the delivery point."

The compression provision is located in a subsection entitled "PRESSURE." The subsection is four sentences long, and the first three sentences of the section all discuss the transfer of gas from Lillis to Kachina at the delivery point. Specifically, the first three sentences provide that "[Lillis] shall deliver the gas deliverable hereunder, at the above described delivery point at a pressure sufficient to enter [Kachina]'s pipeline" and that Lillis "will regulate its pressures so as to not exceed the maximum allowed operating pressure . . . for deliveries into [Kachina]'s gas pipeline." In addition, regarding compression, the subsection states that neither party is "obligated to compress any gas" and clarifies that "if [Lillis's] well is no longer capable of delivering gas against the working pressures maintained at the delivery point and neither party elects to install a compressor," Kachina will release the "well and the gas produced" by it from the requirements of the agreement if Lillis asks Kachina to do so. Finally, the subsection sets out the compression-cost provision in which Kachina will deduct compression costs if it elects to "install[] compression to effect delivery of [Lillis]'s gas."

When the compression-cost provision is read in context with the remainder of the section and in light of the fact that the remainder of the subsection containing the provision pertains to the delivery of gas from Lillis to Kachina at the delivery point, that the references to compression and pressure in the first three sentences all refer to the pressure needed to move Lillis's gas into Kachina's pipeline, and that the compression-cost provision authorizing recovery for costs

for compressors installed by Kachina immediately follows the sentence explaining that neither Kachina nor Lillis is obligated to install a compressor to aid in the transfer of Lillis's gas to Kachina, we believe that the compression-cost provision is a logical conclusion to the first three sentences and can only be read as authorizing Kachina to charge compression costs if it installs compressors to aid in the transfer of the gas from Lillis to Kachina or, as the agreement states, "effect delivery of [Lillis]'s gas." In other words, the provision does not expressly speak to whether Kachina may seek recovery for compression that occurs after gas has been transferred from Lillis to Kachina. Moreover, although another provision authorizes Kachina to "reserve[] and except[] from the terms of this Agreement, only sufficient gas for the operation of compressor stations . . . by and on behalf of [Kachina] required to provide gas to third party purchasers,"[5] nothing in that provision or the remainder of the agreement specifies that Kachina may charge Lillis for compression performed after the gas is delivered to Kachina.

In its motion for rehearing, Kachina asserts that this Court has a "misunderstanding of the physics of how gas is transported" and further asserts that its construction of the compression-cost provision is proper because Kachina must compress gas to deliver it into the working pressures maintained by downstream processors. However, the contract, as written, is not amenable to the construction offered by Kachina. To construe the provision as suggested by Kachina, we would

---

[5] In its brief, Kachina asserts that any argument pertaining to the gas-reservation provision was not properly preserved for appeal because Lillis did not mention the provision to the district court. Although Lillis did not mention the provision below, he did argue that the agreement does not authorize the compression charges at issue. Contract construction is a question that we review de novo, and when performing that task, we review the entire contract. *See Greenspoint Dodge of Houston, Inc.*, 297 S.W.3d at 252-53.

16

essentially have to add the phrase "to a third party" to the end of the compression-cost provision so that the provision will authorize the recovery of compression costs if Kachina "installs compression to effect delivery of [Lillis]'s gas *to a third party*." Even with the addition of the new phrase, the construction proposed by Kachina would be difficult to reconcile with the remainder of the section. Regardless, the provision was not written with the additional language, and we are required to construe unambiguous contracts as written. *See David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450-451 (Tex. 2008) (per curiam).

As further support for its argument that the agreement authorizes compression costs incurred after Kachina takes possession of the gas, Kachina refers to various evidence that was presented to the district court, including evidence showing that Kachina charged Lillis costs for compression performed downstream of the delivery point prior to entering into the agreement in 2005, expert testimony regarding the meaning of the agreement and standard industry custom and usage, and information regarding the financial benefits that Lillis incurred due to the compression. Although that evidence demonstrates the wisdom of installing compressors downstream from the delivery points for all of the producers using a pipeline, that evidence cannot be used to contradict contract language that is plain and unambiguous. *See* Tex. Bus. & Com. Code Ann. § 2.202 (West 2009) (stating that terms intended as final expression of agreement "may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented . . . by course of performance, course of dealing, or usage of trade"); *see also Transcontinental Gas Pipeline Corp. v. Texaco, Inc.*, 35 S.W.3d 658, 670 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (explaining that trade usage or custom evidence may be used to

17

establish meaning of ambiguous contract or "explain, supplement, or qualify an agreement, but it may not be used to contradict an express term"); *Global Octanes Tex., L.P. v. BP Exploration & Oil, Inc.*, 154 F.3d 518, 522 (5th Cir. 1998) (explaining that evidence of course of performance "may not be used to contradict the express terms of an unambiguous contract").

For the reasons previously given, we sustain the portion of Lillis's first issue challenging the district court's declaration that Kachina was authorized under the agreement to charge compression costs.

**Entry of Final Judgment**

In his first issue, Lillis also contends that the district court erred by "rendering a final judgment" shortly after entering an order granting Kachina's motion for partial summary judgment. Specifically, Lillis argues that the judgment was improper because it disposed of "his claim for an itemized accounting of the income and expenses underlying the sums which Kachina tendered as payment for the gas that the buyer purchased from Lillis" even though "Kachina never presented a ground requesting a disposition of the claim" or a ground that was relevant to the claim in its summary-judgment motion. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 204 (Tex. 2001) (stating that granting more relief than requested by movant for summary judgment makes order reversible). Accordingly, Lillis urges that the district court's rendition of a final judgment was improper and asks this Court to reverse and remand the accounting claim.

In his accounting claim, Lillis sought relief that was consistent with his claims for breach of contract and for declaratory relief. *Michael v. Dyke*, 41 S.W.3d 746, 754 (Tex. App.—Corpus Christi 2001, no pet.) (explaining that "[a]n action for accounting may be a suit in

18

equity, or it may be a particular remedy sought in conjunction with another cause of action"). In his live pleading, Lillis's first count was entitled "Accounting." The argument contained in the accounting section of the pleading provides as follows:

> Kachina has failed and refused to account to Lillis for all the income, expense, and net profits from Lillis' sale of gas to Kachina, and Kachina's resale of such gas to third parties. The Court should order an accounting concerning this matter, and thereafter, order Kachina to pay Lillis the correct amount of the income Kachina has received from the resale of gas to third parties.

Under the section of his pleading entitled "DAMAGES," Lillis explained that "[w]ith respect to an accounting, Lillis reserve[d] the right to amend his pleadings to state the actual amount of money due and accruing to him from improper deduction of compression costs and for any improper accounting of proceeds from the sale of gas sold to Kachina, and received by it from third parties."

Once the district court granted Kachina's motion for summary judgment and declared that Kachina may charge for compression occurring after gas was transferred to Kachina, it issued a final judgment disposing of all of Lillis's remaining claims, including his claim for an accounting. *See id.* at 755 (explaining that issue of whether person was entitled to accounting could not be reached "unless it is first determined that he is owed at least some damages"). Because we have determined that the district court erred by issuing the declaration regarding compression costs, we sustain this portion of Lillis's first issue and remand the issue of an accounting for consideration in light of this opinion.

On rehearing, Kachina urges that this Court shirked its judicial responsibilities and violated the rules of appellate procedure by failing to "confront[] and resol[ve]" an issue

"raised on appeal." Specifically, Kachina insists that when we remanded the accounting issue, we improperly failed to address its assertion that Lillis abandoned his request for an accounting in a hearing before the district court concerning a motion for summary judgment. During that hearing, Lillis's attorney made the following statement: "we are only disputing Kachina's ability to charge us $278,000 for compression. Therefore, Your Honor, the issue here is whether Kachina lawfully deducted $278,142.01 from payments that it made to Mr. Lillis . . . for compression charges." In light of that statement, Kachina argues that Lillis informed the district court that he was not disputing the amount of the compression costs and had, therefore, abandoned his claim for an accounting.

As a preliminary matter, we note that it is not entirely clear that a determination regarding whether the accounting claim was abandoned is warranted here. As discussed previously, Lillis's accounting claim stems from the relief that he sought through his claims for breach of contract and for declaratory relief, and those claims sought declarations that were the opposite of the declaration that the district court issued. In other words, while Kachina sought a declaration that it was authorized to deduct the compression costs, Lillis pursued relief detailing that Kachina was not authorized to deduct the compression costs. Given the fact that we have reversed the district court's declaration that compression costs were authorized, we can see no reason why on remand Lillis would not be authorized to seek recovery of the compression costs it previously paid or to have determined the amount of compression costs that Kachina charged.

In any event, we are not persuaded that Lillis abandoned his right to seek an accounting. *See In re Shaw*, 966 S.W.2d 174, 177 (Tex. App.—El Paso 1998, no pet.) (explaining that whether party has abandoned claim is question of law reviewed de novo). When the statement made by

20

Lillis's attorney is read in context with the remainder of the attorney's comments, we do not believe that the statements constituted an intention to relinquish a claim for an accounting. *See In re C.C.J.*, 244 S.W.3d 911, 921 (Tex. App—Dallas 2008, no pet.) (providing that when deciding if claim has been abandoned, courts should determine intent of parties by examining surrounding circumstances as well as attitude of parties with respect to issue). When discussing the purpose of the suit, Lillis's attorney explained that Lillis was disputing Kachina's ability to charge compression costs and that Kachina's expert stated that Kachina charged $278,142.01 in compression costs. It was in the context of these overarching topics that Lillis's attorney made the statement summarizing an issue in dispute as being whether Kachina improperly deducted $278,142.01. Moreover, there is no mention of Lillis's claim for an accounting, and accordingly, there is no expression clearly indicating an intent to abandon that claim. *See id.* at 921 (stating that if stipulation is "ambiguous or unclear," trial court should disregard it).

For all of these reasons, we cannot agree with Kachina that Lillis abandoned his claim for an accounting.

**Attorney's Fees**

In his second issue on appeal, Lillis asserts that the district court erred when it awarded Kachina attorney's fees and expenses under the declaratory judgment act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2008) (empowering trial court to "award costs and reasonable and necessary attorney's fees as are equitable and just"). In light of our resolution of Lillis's first issue on appeal, we sustain Lillis's second issue and remand the issue of attorney's fees

and expenses for consideration of that issue in light of our ruling. *See SAVA Gumarska in Kemijska Industria D.D. v. Advanced Polymer Scis., Inc.*, 128 S.W.3d 304, 324 (Tex. App.—Dallas 2004, no pet.) (explaining that when declaratory judgment is reversed on appeal, court "may remand the attorney's fee award for reconsideration" but is not required to); *State Farm Lloyds v. Borum*, 53 S.W.3d 877, 894-95 (Tex. App.—Dallas 2001, pet. denied) (recognizing that trial courts may award attorney's fees to nonprevailing parties but determining that remand of issue of attorney's fees was appropriate to allow court to reconsider whether award was still "equitable and just" in light of fact that appellate court reversed trial court's judgment); *see also Mitchell v. Ballard*, No. 06-12-00012-CV, 2012 Tex. App. LEXIS 8585, at \*25-26 (Tex. App.—Texarkana Oct. 12, 2012, no pet.) (stating that trial court might exercise discretion over attorney's fees "differently in light of our opinion" and that reversal might affect whether attorney's fees are equitable and just).

## CONCLUSION

Having sustained in part and overruled in part Lillis's first issue on appeal, we affirm the district court's declaration regarding the manner in which the agreement may be amended, reverse the declaration regarding compression costs and the portion of the declaration addressing the termination date of the agreement, and remand the issue of Lillis's claim for an accounting. Further, given our disposition of Lillis's first issue, we reverse the portion of the district court's judgment regarding attorney's fees and expenses and remand that issue for further proceedings.

22

_____

David Puryear, Justice

Before Justices Puryear, Henson, and Goodwin
  Justice Henson not participating.

Affirmed in Part; Reversed and Remanded in Part on Motion for Rehearing

Filed:   June 18, 2013