

# IN THE
# TENTH COURT OF APPEALS

### No. 10-18-00161-CV

**ABEST HOLDINGS, LLC,**

                                                   **Appellant**

 **v.**

**FORT WORTH MAR-G, LTD,**

                                                   **Appellee**

---

### From the 249th District Court
### Johnson County, Texas
### Trial Court No. DC-C201700263

---

## MEMORANDUM OPINION

---

For thirty years or more, Fort Worth Mar-G, Ltd. (FWMG) operated a commercial billboard on a certain parcel of land. During that time, the ownership of the parcel of land was transferred among various individuals and entities until the parcel was eventually purchased by Abest Holdings, LLC (Abest). After Abest acquired the parcel, a dispute arose over the billboard, resulting in FWMG suing Abest. Following a bench trial, the trial court rendered judgment in favor of FWMG. Abest is appealing the trial court's judgment in four issues.

BACKGROUND

In 2003, Floyd Watkins, the then owner of the parcel of land, FWMG, and Bil-Mag, Inc. (Bil-Mag), entered into an agreement entitled "Commercial Billboard Venture Agreement" (the Billboard Agreement) as part of a settlement of prior litigation between Watkins and FWMG regarding the billboard. The Billboard Agreement provides in relevant part:

1. Purpose. The Parties form this Agreement to govern the leasing of a commercial billboard located, according to utility records, at 2400 I-35W South, approximately 9 miles south of Burleson, Texas in Johnson County, Texas, which billboard is owned by Fort Worth Mar-G, Ltd., constructed upon land owned by Floyd W. Watkins and leased for that purpose to Fort Worth Mar-G, Ltd., and is usable for advertising purposes pursuant to a State of Texas issued permit owned and held by Bil-Mag, Inc. It is the intent of the parties that each shall receive a 1/3 share of all net advertising rentals received by them from the billboard, as defined more specifically hereinbelow.

2. Contributions.

A. Fort Worth Mar-G, Ltd. will provide the billboard structure, and will be responsible for locating and maintaining an advertiser therefore, as well as accounting to the other parties hereto for revenue and expenses.

B. Floyd W. Watkins will provide the land upon which the billboard is located, being a portion of the land described in Exhibit "A" attached hereto, more particularly described as that small tract of land in the southeast corner of the property as set out on page 2 of the attached exhibit.

C. Bil-Mag, Inc. will provide the Outdoor Advertising Sign Permit concerning the billboard location.

3. Responsibilities of Each Party.

A. Fort Worth Mar-G, Ltd. agrees to maintain the billboard in good condition, and to use best efforts to secure advertising at

the maximum rentals possible. Fort Worth Mar-G, Ltd. further agrees to . . . properly account to each party as is more specifically set forth herein. . . .

> B. Floyd W. Watkins agrees to lease the land upon which the billboard is situated, with his payments to be received under this Agreement to served [*sic*] as all rentals therefor. . . .

> C. Bil-Mag, Inc. agrees to take all steps, and bear all expenses, to ensure that the license concerning the subject billboard is at all times in full force and effect.

The parties hereto further agree that the real property provided by lease by Floyd W. Watkins hereunder is to be used solely for the operation and maintenance of the billboard the subject of this Agreement. The other parties hereto, or their agents or employees, shall have the right to enter the property at reasonable times to post, paint, illuminate and maintain the structure and the advertising thereon.

> . . . .

> 5. Term. This Agreement shall be for a term of (99) ninety-nine years, commencing on the date of execution hereof. This Agreement shall terminate and the obligations of each of the parties hereunder shall be deemed completed on the happening of any of the following events: (a) the mutual written asset [*sic*] of each of the parties hereto, or their successors in interest; (b) the billboard is no longer usable for commercial purposes or the parties are prevented by a present or future law, regulation or ordinance from maintaining a billboard on the premises, or (c) the billboard structure is destroyed through no fault of the parties and the parties determine not to repair it.

> . . . .

> 8. . . .

The parties hereto specifically covenant and agree that this Agreement shall be binding upon and inure to the benefit of the parties, their heirs, successors, assigns and personal representatives.

The Billboard Agreement was not recorded in the real property records.

On December 9, 2005, Watkins sold his interest in the parcel of land to Frank's Casing Crew and Rental Tools, Inc. (FCC). As part of the conveyance, Watkins and FCC entered into an agreement entitled "Indemnity Agreement" (the Indemnity Agreement) that acknowledged the conveyance to FCC and recited that Watkins retained all rights, obligations, benefits, costs, and expenses relating to the billboard and the Billboard Agreement. The Indemnity Agreement further allowed the parties to the Billboard Agreement access to the billboard for maintenance and contained a provision in favor of FCC against Watkins for any claims arising out of the Billboard Agreement or the billboard's existence, construction, maintenance, repair, or damage. The Indemnity Agreement was likewise not recorded in the real property records.

FCC sold its interest in the land on August 14, 2013 to Mosing Ventures, L.L.C. (Mosing), and Mosing sold its interest in the land to Abest on August 8, 2016. The deed executed by Mosing to Abest contained several exceptions to the conveyance and warranty by the grantor, Mosing, including the "[r]ights of third parties in and to the billboard shown in the Southeast corner of the subject property."

FWMG thereafter sued Abest for breaching the Billboard Agreement by refusing to grant FWMG access to the billboard or to allow FWMG the right to enter the property to post, paint, illuminate, and maintain the billboard. FWMG further sought a declaratory judgment against Abest that (1) FWMG owns the billboard, (2) Abest is a successor in interest to the Billboard Agreement and Indemnity Agreement and, as such, is bound by their terms, and (3) FWMG has a ninety-nine-year lease on the property and Abest is obligated to allow FWMG access to the property to post, paint, illuminate, and

maintain the billboard. Alternatively, FWMG claimed an easement by estoppel to access the billboard. Finally, FWMG sought a permanent injunction enjoining Abest from asserting any ownership in or any control over the billboard and from denying FWMG access to the property to perform necessary maintenance and repairs to the billboard.

Abest filed an answer denying FWMG's allegations and asserting a counterclaim against FWMG for trespass to try title. Abest further sought a declaratory judgment against FWMG that (1) the billboard is a fixture to the property, (2) the Billboard Agreement did not create a lease of the property, and (3) Abest did not have actual or constructive knowledge of the Billboard Agreement or Indemnity Agreement before its purchase of the property.

After a bench trial, the trial court entered a final judgment as follows:

- it declared FWMG the owner of the billboard;

- it declared that Abest is a successor in interest to Watkins under the Billboard Agreement and a successor in interest to FCC under the Indemnity Agreement and, as such, is bound by the terms of those agreements;

- it declared that FWMG has a leasehold interest in the real property on which the billboard is located pursuant to the Billboard Agreement, which includes the right of ingress and egress across the property at reasonable times for the purpose of posting, painting, illuminating, and maintaining the billboard;

- it assessed actual damages of $2,388.75 and attorney's fees of $53,706.92 in favor of FWMG against Abest; and

- it issued a permanent injunction against Abest, prohibiting alterations or removal of the billboard and allowing FWMG access to the billboard for maintenance.

The trial court also entered the following findings of fact and conclusions of law:

# FINDINGS OF FACT

. . . .

2.      . . . FWMG is the owner of the Billboard (the "<u>Billboard</u>") located at the southeast corner of the property commonly known as 2324 South Burleson Boulevard (I-35W), Burleson, Texas 76028 (the "<u>Property</u>"); specifically described as follows:

[Metes and bounds description of the Property].

3.      . . . Abest has no ownership interest in the Billboard.

4.      . . . Abest is the owner of the Property.

5.      . . . [The Billboard Agreement] between FWMG, Abest's predecessor in interest to the Property Floyd W. Watkins, and Bil-Mag, Inc. is a valid, enforceable contract which grants FWMG an exclusive possessory leasehold interest in the portion of the Property on which the Billboard is located.

6.      . . . [T]he Billboard Agreement grants FWMG the right of ingress and egress across the Property to post, paint, illuminate, and maintain the structure of the Billboard and advertising thereon.

7.      . . . [T]he Billboard Agreement is binding upon all successors in interest to the Property, including but not limited to Abest.

8.      . . . [The Indemnity Agreement] between Floyd W. Watkins and Frank's Casing Crew and Rental Tools, Inc. is a valid, enforceable contract.

9.      . . . [T]he Indemnity Agreement is binding upon all successors in interest to the Property, including but not limited to Abest.

10.     . . . Abest had actual notice of FWMG's rights in and to the Billboard and the Property.

11.     . . . Abest had constructive notice of FWMG's rights in and to the Billboard and the Property.

12.     . . . Abest failed to conduct a reasonable inquiry regarding third-party rights in and to the Billboard and the Property.

13.    . . . Abest failed to comply with the Billboard Agreement by denying FWMG access to the Billboard.

14.    . . . FWMG sustained actual damages in the amount of $2,388.75 from lost advertising rental payments as a result of Abest's failure to comply with the Billboard Agreement.

15.    . . . Abest's predecessors in interest to the Property represented to FWMG, by word or action, that FWMG had an exclusive possessory leasehold interest in the portion of the Property on which the Billboard is located, and the right of ingress and egress across the Property to post, paint, illuminate, and maintain the structure of the Billboard and the advertising thereon.

16.    . . . FWMG believed and relied upon the representations of Abest's predecessors in interest to the Property.

17.    . . . FWMG acted upon the representations of Abest's predecessors in interest to the Property by operating the Billboard on the Property and accessing the Billboard by crossing the Property for many years.

18.    . . . FWMG incurred $53,706.92 in reasonable and necessary attorney's fees and costs attributable to its Breach of Contract and Declaratory Judgment claims.

19.    . . . [T]he following contingent attorney's fees for FWMG are reasonable and necessary in the event of post-judgment motion(s) and/or appeal(s) filed by Abest:

[Detailed explanation of contingent attorney's fees].

. . . .

## CONCLUSIONS OF LAW

. . . .

2.    . . . [A] declaratory judgment that FWMG owns the Billboard is proper.

3. . . . [T]he Billboard Agreement grants FWMG an exclusive possessory leasehold interest in the portion of the Property on which the Billboard is located.

4. . . . [T]he Billboard Agreement grants FWMG the right of ingress and egress across the Property to post, paint, illuminate, and maintain the structure of the Billboard and the advertising thereon.

5. . . . Abest had a duty to inquire about and ascertain the rights of third-party(s) in and to the Billboard and the Property.

6. . . . Abest is not a bona fide purchaser for value with respect to FWMG's rights in and to the Billboard and the Property.

7. . . . Abest is liable to FWMG for breach of contract.

8. . . . Abest is estopped from claiming any ownership interest in the Billboard or otherwise denying its knowledge of FWMG's rights in and to the Billboard and the Property.

9. . . . Abest is estopped from denying FWMG the right of ingress and egress across the Property to post, paint, illuminate, and maintain the structure of the Billboard and the advertising thereon.

10. . . . FWMG is not guilty of trespass to try title.

11. . . . FWMG will suffer irreparable injury unless Abest is permanently enjoined from altering or removing the Billboard, or taking any action to interfere with or deny FWMG's right of ingress and egress across the Property to post, paint, illuminate, and maintain the structure of the Billboard and the advertising thereon, and that FWMG has no other adequate legal remedy.

## STANDARD OF REVIEW

Abest has not framed its issues as challenges to specific findings of fact or conclusions of law. *See Shaw v. County of Dall.*, 251 S.W.3d 165, 169 (Tex. App.—Dallas 2008, pet. denied) ("A party appealing from a nonjury trial in which the trial court made findings of fact and conclusions of law should direct his attack on the sufficiency of the

evidence at specific findings of facts, rather than at the judgment as a whole."). Nevertheless, we will review each of Abest's issues as challenges to the findings of fact and conclusions of law to the extent that we can fairly ascertain the findings of fact and conclusions of law that Abest is challenging in each issue. *See Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 534 S.W.3d 558, 582 (Tex. App.—San Antonio 2017) ("[A] challenge to an unidentified finding of fact may be sufficient if the reviewing court—after giving consideration to the number of findings, the nature of the case, and the underlying elements of the applicable legal theories—can fairly determine from the argument the specific finding being challenged."), *aff'd*, 593 S.W.3d 324 (Tex. 2020); *see also Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 863 (Tex. 2005) (per curiam) ("[A]n appellate court should consider the parties' arguments supporting each point of error and not merely the wording of the points.").

A trial court's findings after conducting a bench trial have the same force and dignity as a jury's verdict upon questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). The findings of a trial court may be reviewed for legal and factual sufficiency under the same standards that are applied in reviewing evidence to support a jury's answers. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam); *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). When reviewing legal sufficiency, we consider all of the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). If there is more than a scintilla of evidence supporting a finding of fact, we will overrule a legal sufficiency challenge. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors,*

*Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). When a party attacks the legal sufficiency of an adverse finding on which it did not have the burden of proof, it must demonstrate there is no evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). When reviewing a factual sufficiency challenge, we consider all of the evidence and set aside a finding only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Ortiz*, 917 S.W.2d at 772. When the appellate record contains a reporter's record, findings of fact are not conclusive and are binding only if supported by the evidence. *Fulgham v. Fischer*, 349 S.W.3d 153, 157 (Tex. App.—Dallas 2011, no pet.). If there is a conflict in the evidence, the trier of fact is the exclusive judge of the facts proved, the credibility of the witnesses, and the weight to be given to their testimony. *Bonner v. Oliver*, 219 S.W.2d 136, 137 (Tex. App.—Waco 1949, writ ref'd n.r.e.).

We review the trial court's conclusions of law *de novo*. *Material P'ships, Inc. v. Ventura*, 102 S.W.3d 252, 257 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). The standard of review for conclusions of law is whether they are correct. *Id.* We will uphold conclusions of law on appeal if the judgment can be sustained on any legal theory the evidence supports. *Id.* Under *de novo* review, the reviewing court exercises its own judgment and redetermines each legal issue. *Wells Fargo Bank, N.A. v. Citizens Bank of Tex., N.A.*, 181 S.W.3d 790, 796 (Tex. App.—Waco 2005, pet. denied). Thus, incorrect conclusions of law do not require reversal if the controlling findings of fact support the judgment under a correct legal theory. *Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*,

835 S.W.2d 190, 196 (Tex. App.—Austin 1992, no writ). Moreover, conclusions of law may not be reversed unless they are erroneous as a matter of law. *Id.*

We begin with Abest's second issue, in which Abest complains that the trial court erred in determining that the Billboard Agreement and the Indemnity Agreement are binding on Abest. In this issue, Abest essentially challenges the trial court's findings of fact and conclusions of law supporting a determination that (1) Texas Property Code section 13.001(b) renders the Billboard Agreement or the Indemnity Agreement binding on Abest or (2) Abest is a contractual successor that was assigned rights or obligations under either the Billboard Agreement or the Indemnity Agreement such that the Billboard Agreement or the Indemnity Agreement is binding on Abest.

## A. Successor in Interest

We first address Abest's argument that Abest is not a contractual successor that was assigned rights or obligations under either the Billboard Agreement or the Indemnity Agreement such that Abest is bound by the terms of either the Billboard Agreement or the Indemnity Agreement.

FWMG points out in its brief that both the Billboard Agreement and the Indemnity Agreement state that they are binding on successors in interest. The Billboard Agreement includes the statement: "The parties hereto specifically covenant and agree that this Agreement shall be binding upon and inure to the benefit of the parties, their heirs, successors, assigns and personal representatives." Similarly, the Indemnity Agreement

states: "This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective legal representatives, successors and assigns."

But the term "successor" does not encompass a third-party purchaser of property. *See Farm & Home Sav. Ass'n v. Strauss*, 671 S.W.2d 682, 685 (Tex. App.—Dallas 1984, no writ); *see also Zbranek Custom Homes, Ltd. v. Allbaugh*, No. 03-14-00131-CV, 2015 WL 9436630, at *4 (Tex. App.—Austin Dec. 23, 2015, pet. denied). Therefore, there is no evidence here that Abest is either Watkins's or FCC's legal successor or assign. The trial court thus erred in determining that Abest is bound by the terms of the Billboard Agreement and the Indemnity Agreement because Abest is a contractual successor.

### B.   Texas Property Code Section 13.001

We next address Abest's argument that Texas Property Code section 13.001(b) does not render the Billboard Agreement or the Indemnity Agreement binding on Abest.

Section 13.001 of the Property Code, entitled "Validity of Unrecorded Instrument," provides in pertinent part:

> (a)   A conveyance of real property or an interest in real property or a mortgage or deed of trust is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice unless the instrument has been acknowledged, sworn to, or proved and filed for record as required by law.
>
> (b)   The unrecorded instrument is binding on a party to the instrument, on the party's heirs, and on a subsequent purchaser who does not pay a valuable consideration or who has notice of the instrument.

TEX. PROP. CODE ANN. § 13.001(a), (b). The unrecorded Billboard Agreement is therefore binding on Abest if (1) the Billboard Agreement was a "conveyance of real property or an interest in real property or a mortgage or deed of trust" and (2) Abest was a subsequent

purchaser who did not pay a valuable consideration or who had notice of the Billboard Agreement. *See id.* Likewise, the unrecorded Indemnity Agreement is binding on Abest if (1) the Indemnity Agreement was a "conveyance of real property or an interest in real property or a mortgage or deed of trust" and (2) Abest was a subsequent purchaser who did not pay a valuable consideration or who had notice of the Indemnity Agreement. *See id.*

1.      **The Billboard Agreement**

a.      **The Nature of the Billboard Agreement**

Abest first contends that the Billboard Agreement did not create a possessory leasehold interest or any other interest in real property. Abest argues that the Billboard Agreement was instead an attempt to convey a license to FWMG.

A lease is a grant of an estate in land for a limited term, with conditions attached. *Holcombe v. Lorino*, 79 S.W.2d 307, 310 (Tex. 1935). A license, on the other hand, "is a privilege or authority given to one or retained by one to do some act or acts on the land of another, but which does not amount to an interest in the land itself." *Settegast v. Foley Bros. Dry Goods Co.*, 270 S.W. 1014, 1016 (Tex. [Comm'n Op.] 1925); *accord H.E.Y. Trust v. Popcorn Express Co.*, 35 S.W.3d 55, 58 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).

Whether the Billboard Agreement conveyed an interest in real property or a license is a matter of contract interpretation. *See, e.g.*, *Meridien Hotels, Inc. v. LHO Fin. P'ship I, L.P.*, 255 S.W.3d 807, 815-20 (Tex. App.—Dallas 2008, no pet.) (interpreting lease agreement); *Rolling Lands Invs., L.C. v. Nw. Airport Mgmt., L.P.*, 111 S.W.3d 187, 196-97 (Tex. App.—Texarkana 2003, pet. denied) (interpreting license agreement). The

interpretation of an unambiguous contract is a question of law. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650 (Tex. 1999). Whether a contract is ambiguous or unambiguous is also a question of law. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). A contract is unambiguous if it can be given a definite or certain legal meaning. *Id.* If, however, the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous. *Id.* When a contract is ambiguous, the parties' intent is a question of fact. *Id.*

The primary concern in construing a written contract is to ascertain the true intentions of the parties as expressed in the instrument. *Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 743 (Tex. 2020). To achieve this objective, we examine and consider the entire document in an effort to harmonize and give effect to all provisions of the contract so that none will be rendered meaningless. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). We presume that the parties to the contract intended every clause to have some effect. *Anadarko Petroleum Corp. v. Thompson*, 94 S.W.3d 550, 554 (Tex. 2002). Additionally, in interpreting the contract, we give words their plain, common, generally accepted meanings unless the contract shows that the parties used words in a technical or different sense. *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 305 (Tex. 2015).

"To create the relation of landlord and tenant, no particular words are necessary, but it is indispensable that it should appear to have been the intention of one party to dispossess himself of the premises and of the other to occupy them" with knowledge of the landlord's superior interest in the premises. *Brown v. Johnson*, 12 S.W.2d 543, 545 (Tex.

[Comm'n Op.] 1929); *accord Cleveland Reg'l Med. Ctr., L.P. v. Celtic Props., L.C.*, 323 S.W.3d 322, 334 (Tex. App.—Beaumont 2010, pet. denied); *Wilson v. Wagner*, 211 S.W.2d 241, 243 (Tex. App.—San Antonio 1948, writ ref'd n.r.e.).  A lease therefore generally grants a tenant exclusive possession of the premises as against the owner.  *Cleveland v. Milner*, 170 S.W.2d 472, 475 (Tex. [Comm'n Op.] 1943); *Levesque v. Wilkens*, 57 S.W.3d 499, 504 (Tex. App.—Houston [14th Dist.] 2001, no pet.).  But exclusive possession is not a requirement for every lease because a landlord may reserve some rights of possession and entry in the terms of the lease.  *See De Leon v. Creely*, 972 S.W.2d 808, 812-13 (Tex. App.—Corpus Christi 1998, no pet.); *see also Levesque*, 57 S.W.3d at 505.

Abest argues here that the Billboard Agreement did not create a possessory leasehold interest because although the word "lease" is used multiple times in the document, the Billboard Agreement does not contain a granting clause or any present tense words of conveyance indicating that Watkins intended to dispossess himself of the realty.  Abest analogizes the Billboard Agreement to the agreement in *Vallejo v. Pioneer Oil Company*, 744 S.W.2d 12 (Tex. 1988) (per curiam).  In *Vallejo*, the agreement in question was titled "Lease and Operating Agreement," referred to the parties as "lessor" and "lessee," and contained many prerequisites of a valid lease, but the Texas Supreme Court held that the agreement was not a lease because it did not contain a granting clause.  *Id.* at 13-14.  In other words, the agreement did not contain any terms reflecting an intention on the part of the "lessor" to transfer to the "lessee" an interest or a right of possession in the property.  *Id.* at 15.

The agreement in *Vallejo*, however, is distinguishable from the Billboard Agreement. Section 1 of the Billboard Agreement states that the "billboard is owned by [FWMG], constructed upon land owned by . . . Watkins and *leased for that purpose to [FWMG]*. [Emphasis added.]" Subsection 2B of the Billboard Agreement, describing Watkins's "contribution" under the agreement, further states that Watkins "will provide the land upon which the billboard is located." Subsection 3B of the Billboard Agreement then states that Watkins "agrees to lease the land upon which the billboard is situated, with his payments to be received under this Agreement to served [*sic*] as all rentals therefor." The Billboard Agreement therefore contains language clearly reflecting Watkins's intention to transfer to FWMG a right of possession in the land upon which the billboard is located.

Furthermore, the Billboard Agreement contains language reflecting Watkins's intention that FWMG's possession of the property be exclusive. The Billboard Agreement clearly designates FWMG as the lone party responsible for the operation and maintenance of the billboard. Section 1 of the Billboard Agreement states that the "billboard is owned by [FWMG]." Subsection 2A of the Billboard Agreement, describing FWMG's "contribution" under the agreement, states that FWMG "will provide the billboard structure" and "be responsible for locating and maintaining an advertiser" on the billboard. Subsection 3A of the Billboard Agreement further makes it FWMG's "responsibility" under the agreement "to maintain the billboard in good condition" and "to use best efforts to secure advertising at the maximum rentals possible." Neither Watkins nor Bil-Mag shares any of those operation-and-maintenance responsibilities

under the agreement. Section 3 of the Billboard Agreement then states: "The parties hereto further agree that the real property provided by lease by . . . Watkins hereunder is to be used *solely* for the operation and maintenance of the billboard the subject of this Agreement. [Emphasis added.]" The use of the word "solely" therefore unambiguously reflects Watkins's intention to dispossess himself of the land upon which the billboard is located such that FWMG's possession is exclusive.

Abest next argues that the wording and placement of the right-to-enter language in the Billboard Agreement undermine any determination that the parties intended FWMG to have exclusive possession of the land upon which the billboard is located. Just after the above-quoted sentence requiring the leased property to be used solely for the operation and maintenance of the billboard, the Billboard Agreement states: "The other parties hereto, or their agents or employees, shall have the right to enter the property at reasonable times to post, paint, illuminate and maintain the structure and the advertising thereon." Abest argues that this language gives Bil-Mag the same rights to the property as it gives FWMG. Abest also asserts that the language limits FWMG's right to use the property and restricts FWMG's access to the billboard to "reasonable times."

But a lease may restrict a tenant's right to use the property. *See, e.g.*, *Rosen v. Peck*, 445 S.W.2d 241, 243 (Tex. App.—Waco 1969, no writ) (lease restricted use of property to operation of bowling alleys and services normally found in bowling alley). FWMG's ingress and egress rights may also be limited to "reasonable times." *See Bradshaw v. Lower Colo. River Auth.*, 573 S.W.2d 880, 884 (Tex. App.—Beaumont 1978, no writ) (holding trial court did not err in limiting ingress and egress rights to "reasonable access"). Moreover,

Abest Holdings, LLC v. Fort Worth Mar-G, Ltd.                                      Page 17

as explained above, the Billboard Agreement designates FWMG the sole party responsible for the operation and maintenance of the billboard. FWMG is therefore the only party needing "the right to enter the property at reasonable times to post, paint, illuminate and maintain the structure and the advertising thereon." Accordingly, the right-to-enter language in the Billboard Agreement does not undermine any determination that the parties intended FWMG to have exclusive possession of the property upon which the billboard is located. *See Coker*, 650 S.W.2d at 393 ("No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument.").

Abest next argues that the terms of the Indemnity Agreement demonstrate that FWMG was not granted exclusive possession of the property by the Billboard Agreement. But the Indemnity Agreement is parol evidence as to the Billboard Agreement, and parol evidence may not be considered to render otherwise unambiguous provisions of a contract ambiguous. *Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (per curiam). In the absence of fraud, accident, or mistake, parol evidence is not admissible to vary, add to, or contradict the terms of a written contract that is facially complete and unambiguous. *Atmos Energy Corp. v. Paul*, 598 S.W.3d 431, 463 (Tex. App.—Fort Worth 2020, no pet.); *Gail v. Berry*, 343 S.W.3d 520, 523 (Tex. App.—Eastland 2011, pet. denied). As explained above, the Billboard Agreement unambiguously reflects that the parties intended FWMG to have exclusive possession of the land upon which the billboard is located.

Abest finally contends that that the Billboard Agreement did not create an interest in real property because the Billboard Agreement is too indefinite. More specifically, Abest complains that the description of the property being conveyed is insufficient, the right-to-enter language is ambiguous, and the designation of the term of the purported lease is indefinite.

For an agreement for the lease of real property for a term longer than one year to be enforceable, it must contain a sufficient written description of the property. *See* TEX. BUS. & COM. CODE ANN. § 26.01; *Long Trusts v. Griffin*, 222 S.W.3d 412, 416 (Tex. 2006) (per curiam); *Tex. Builders v. Keller*, 928 S.W.2d 479, 481 (Tex. 1996) (per curiam). The sufficiency of a legal description in any instrument transferring a property interest is a question of law. *Anderson Energy Corp. v. Dominion Okla. Tex. Expl. & Prod., Inc.*, 469 S.W.3d 280, 295 (Tex. App.—San Antonio 2015, no pet.); *see Haines v. McLean*, 276 S.W.2d 777, 781-82 (Tex. 1955).

"To be sufficient, the writing must furnish within itself, or by reference to some other existing writing, the means or data by which the land to be conveyed may be identified with reasonable certainty." *Morrow v. Shotwell*, 477 S.W.2d 538, 539 (Tex. 1972). The writing need not contain a metes and bounds property description to be enforceable, but it must furnish the data to identify the property with reasonable certainty. *Tex. Builders*, 928 S.W.2d at 481 (citing *Morrow*, 477 S.W.2d at 539). "Extrinsic evidence may be used '"only for the purpose of identifying the [property] with reasonable certainty from the data"' contained in the contract, '"not for the purpose of supplying the location

or description of the [property]."'" *Long Trusts*, 222 S.W.3d at 416 (quoting *Pick v. Bartel*, 659 S.W.2d 636, 637 (Tex. 1983) (quoting *Wilson v. Fisher*, 188 S.W.2d 150, 152 (Tex. 1945))).

The Billboard Agreement here describes the property to be leased to FWMG as the land upon which the billboard is located or situated, "being a portion of the land described in Exhibit 'A' attached hereto, more particularly described as that small tract of land in the southeast corner of the property as set out on page 2 of the attached exhibit." The exhibit is attached to the Billboard Agreement. We believe that this description furnishes the means or data by which the land to be leased to FWMG may be identified with reasonable certainty and is therefore sufficient. *See Morrow*, 477 S.W.2d at 539.

Regarding the right-to-enter language, the fact that an easement clause is vague, indefinite, or uncertain does not authorize a court to completely ignore the valuable right thereby granted. *Vinson v. Brown*, 80 S.W.3d 221, 227 (Tex. App.—Austin 2002, no pet.). With express easements, an exact designation of location is unnecessary, as long as the tract of land that will be burdened by the easement is sufficiently identified. *Id.* Here, the tract of land that will be burdened by the easement is sufficiently identified in the exhibit attached to the Billboard Agreement.

Lastly, "[a] lease contract must, as to its duration, be certain as to time or refer to a certainty." *Holcombe*, 79 S.W.2d at 310. "If the tenant is holding the premises for no certain time as provided by the contract, he is merely a tenant at will." *Id.* Section 5 of the Billboard Agreement defines the term of the agreement as follows: "This Agreement shall be for a term of (99) ninety-nine years, commencing on the date of execution hereof." Abest argues that this is not a definite term because the Billboard Agreement identifies

the date of execution of the agreement as only the year 2003. We believe, however, that the Billboard Agreement sufficiently refers to a certain duration of time. Accordingly, we conclude that the Billboard Agreement is not so indefinite such that it did not create an interest in real property.

In light of the foregoing, we conclude that the trial court did not err in determining that the Billboard Agreement granted FWMG (1) an exclusive possessory leasehold interest in the portion of the property on which the billboard is located and (2) the right of ingress and egress across the property to post, paint, illuminate, and maintain the structure of the billboard and the advertising thereon.

### b. Notice of the Billboard Agreement

Abest next contends in this issue that even if the Billboard Agreement created an interest in real property, the Billboard Agreement is not binding on Abest because Abest was a bona fide purchaser.

Section 13.001 of the Property Code is the codification of the bona-fide-purchaser doctrine. *Orca Assets, G.P., LLC v. Burlington Res. Oil & Gas Co.*, 464 S.W.3d 403, 407 (Tex. App.—Corpus Christi 2015, pet. denied) (mem. op.); *see* TEX. PROP. CODE ANN. § 13.001. A bona fide purchaser is one who acquires property in good faith, for value, and without notice of any third-party claim or interest. *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001) (per curiam). "[A] bona fide purchaser prevails over a holder of a prior unrecorded deed or other unrecorded interest in the same property." *Noble Mortg. & Invs., LLC v. D & M Vision Invs., LLC*, 340 S.W.3d 65, 75 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *see* TEX. PROP. CODE ANN. § 13.001(a). Notice, however, will defeat the protection

otherwise afforded a bona fide purchaser. *Fletcher v. Minton*, 217 S.W.3d 755, 758 (Tex. App.—Dallas 2007, no pet.); *see* TEX. PROP. CODE ANN. § 13.001(b).

Notice may be actual or constructive. *Madison*, 39 S.W.3d at 606.

"Actual notice" literally means express or positive personal information or knowledge directly communicated to the person to be affected. In a more comprehensive sense, the term also embraces knowledge of all those facts which reasonable inquiry would have disclosed, the duty of inquiry extending only to matters that are fairly suggested by the facts really known. In other words, whatever fairly puts a person upon inquiry is actual notice of the facts which would have been discovered by reasonable use of the means at hand.

*Flack v. First Nat'l Bank of Dalhart*, 226 S.W.2d 628, 631-32 (Tex. 1950). Whether a party had actual notice is a question of fact. *Id.* at 632.

Abest acknowledges in its brief, and the evidence establishes, that when Abest purchased the property, Abest had actual knowledge that the billboard was owned by a third party. The contract for sale of the property to Abest was admitted as evidence and expressly states: "The following special provisions apply and will control in the event of a conflict with other provisions of this contract. . . . 1. The Billboard on the Property is owned by a third party, and not the Seller." Trial testimony further reflected that Mosing's listing agent disclosed to a representative of Abest, on more than one occasion, that the billboard was owned by a third party and sent the phone number of FWMG's representative to Abest's representative prior to closing. Abest's representative's testimony further acknowledged that his belief was that the billboard was not included in the sale of the property. The warranty deed conveying the property also excepted out

the "[r]ights of third parties in and to the billboard shown in the Southeast corner of the subject property" from the conveyance and warranties.

Abest argues, however, that although it knew that the billboard was owned by a third party, it did not have knowledge of the existence of the unrecorded Billboard Agreement until the agreement was provided to Abest after Abest refused access to FWMG's electrician. But, as stated above, actual notice also includes knowledge of all those facts that reasonable inquiry would have disclosed. *Id.* at 631-32. After reviewing the evidence under the appropriate standards, we conclude that the evidence is legally and factually sufficient to support the trial court's findings that Abest failed to conduct a reasonable inquiry regarding third-party rights in and to the billboard and the property and that Abest had actual notice of the Billboard Agreement.

Having concluded that the trial court did not err in finding that the Billboard Agreement was a conveyance of an interest in real property and that Abest was a subsequent purchaser who had notice of the Billboard Agreement, we conclude that the trial court also did not err in determining that the Billboard Agreement is binding on Abest. *See* TEX. PROP. CODE ANN. § 13.001.

### 2. The Indemnity Agreement

We now turn to whether section 13.001(b) renders the Indemnity Agreement binding on Abest.

Although the trial court made a finding in this case that the Billboard Agreement created an interest in the realty, the trial court did not make a similar finding regarding the Indemnity Agreement. FWMG seems to argue that the Indemnity Agreement is

nevertheless binding on Abest because Abest was not a bona fide purchaser of the property. But even if Abest was not a bona fide purchaser, section 13.001(b) does not render the Indemnity Agreement binding on Abest unless the Indemnity Agreement was a conveyance of an interest in real property. *See id.* Because it was not, section 13.001(b) does not render the Indemnity Agreement binding on Abest. *See id.*

We therefore conclude that the trial court erred in determining that the Indemnity Agreement is binding on Abest. We sustain Abest's second issue in part and overrule it in part.

## ISSUE THREE

In its third issue, Abest complains that the trial court erred in granting an apparent easement by estoppel to FWMG. In light of our disposition of Abest's second issue, we need not reach this issue.

## ISSUE ONE

In its first issue, Abest asserts that the trial court erred in failing to quiet title in the realty to Abest; however, Abest's argument is that the billboard is a fixture and that because the billboard is a fixture, its ownership passed to Abest, the titleholder of the property. Abest is therefore essentially challenging the trial court's findings of fact and conclusions of law supporting a determination that FWMG is the owner of the billboard and that Abest is estopped from claiming any ownership interest in the billboard.

Subject matter jurisdiction is essential to a court's power to decide a case. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553-54 (Tex. 2000); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). Not only may a reviewing court assess

jurisdiction for the first time on appeal, but all courts bear the affirmative obligation "to ascertain that subject matter jurisdiction exists regardless of whether the parties have questioned it." *City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013) (per curiam) (quoting *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 306 (Tex. 2010) (orig. proceeding)).

The Texas Uniform Declaratory Judgments Act gives Texas courts the power to "declare rights, status, and other legal relations whether or not further relief is or could be claimed." TEX. CIV. PRAC. & REM. CODE ANN. § 37.003(a). The Act "is remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered." *Id.* § 37.002(b).

> The Act does not create or augment a trial court's subject-matter jurisdiction—it is "merely a procedural device for deciding cases already within a court's jurisdiction." *Tex. Ass'n of Bus.*, 852 S.W.2d at 444. A declaratory-judgment action will lie within the trial court's subject-matter jurisdiction when a justiciable controversy exists as to the rights and status of the parties before the court for adjudication, and the requested declaration will actually resolve the controversy. *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163-64 (Tex. 2004); *OAIC Com*[.] *Assets, L.L.C. v. Stonegate Vill., L.P.*, 234 S.W.3d 726, 745 (Tex. App.—Dallas 2007, pet. denied). A justiciable controversy is one in which a real and substantial controversy exists involving a genuine conflict of tangible interest and not merely a theoretical dispute. *Bonham State Bank* [*v. Beadle*], 907 S.W.2d [465,] 467 [(Tex. 1995)]; *Trinity Universal Ins. Co. v. Sweatt*, 978 S.W.2d 267, 270 (Tex. App.—Fort Worth 1998, no pet.) (justiciable controversy is "real controversy between the parties that will be actually determined by the judicial declaration sought"). A justiciable controversy is to be distinguished from an advisory opinion, which is prohibited under the Texas and federal constitutions. *Tex. Ass'n of Bus.*, 852 S.W.2d at 444. If a justiciable controversy does not exist, the trial court must dismiss the case for lack of subject-matter jurisdiction. *Di Portanova v. Monroe*, 229 S.W.3d 324, 330 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).

*Transp. Ins. Co. v. WH Cleaners, Inc.*, 372 S.W.3d 223, 227 (Tex. App.—Dallas 2012, no pet.).

Here, in our disposition of Abest's second issue, we held that the trial court did not err in determining that the Billboard Agreement is binding on Abest. In reaching such holding, we concluded that the trial court did not err in determining that the Billboard Agreement granted FWMG (1) an exclusive possessory leasehold interest in the portion of the property on which the billboard is located and (2) the right of ingress and egress across the property to post, paint, illuminate, and maintain the structure of the billboard and the advertising thereon. Because the term of FWMG's lease has not yet ended, a determination of which party is the owner of the billboard is therefore premature. Until then, a justiciable controversy regarding the ownership of the billboard does not exist.

In light of the foregoing, the trial court did not have jurisdiction to hear the portion of FWMG's declaratory judgment action regarding the ownership of the billboard. *See id.*

### ISSUE FOUR

In its fourth issue, Abest complains that the trial court erred in awarding attorney's fees to FWMG. Abest does not dispute the amount of attorney's fees awarded; it merely argues that FWMG is not entitled to attorney's fees.

Abest first argues that FWMG is not entitled to attorney's fees because FWMG "has merely couched its suit as a declaratory judgment action, when in reality it was a suit for the recovery of an interest in the realty." But a complaint about a failure to use a trespass to try title action instead of a declaratory judgment action can be waived if not raised in the trial court. *Krabbe v. Anadarko Petroleum Corp.*, 46 S.W.3d 308, 321 (Tex.

App.—Amarillo 2001, pet. denied); *see* TEX. R. APP. P. 33.1(a).  Abest did not raise any complaint in the trial court about FWMG failing to use a trespass to try title action instead of a declaratory judgment action.  Abest has therefore failed to preserve such complaint for review.

Abest next argues that FWMG cannot recover attorney's fees for breach of contract because Abest does not have any obligations under the Billboard Agreement if the Indemnity Agreement is enforceable against Abest.  In addressing Abest's second issue, however, we concluded that the trial court erred in concluding that the Indemnity Agreement is binding on Abest.

Accordingly, we overrule Abest's fourth issue.

## CONCLUSION

We vacate that portion of the trial court's judgment declaring that FWMG is the owner of the billboard and dismiss that portion of the trial court's judgment for want of jurisdiction.  *See* TEX. R. APP. P. 43.2(e).  We modify the trial court's judgment by changing

> 2.  Abest Holdings, LLC is a successor in interest to Floyd Watkins in and under the 2003 Commercial Billboard Venture Agreement (the "Billboard Agreement") attached hereto as Exhibit A and incorporated herein by reference, and a successor in interest of Frank's Casing Crew and Rental Tools, Inc. in and under the 2005 Indemnity Agreement (the "Indemnity Agreement") attached hereto as Exhibit B and incorporated herein by reference, and as such, is bound by their terms.

to "2.  Abest Holdings, LLC is bound by the terms of the 2003 Commercial Billboard Venture Agreement (the "Billboard Agreement"), attached hereto as Exhibit A and

incorporated herein by reference."  We otherwise affirm the trial court's judgment as modified.  *See id.* R. 43.2(b).

MATT JOHNSON
Justice

Before Chief Justice Gray,
      Justice Johnson, and
      Justice Scoggins[1]
      (Chief Justice Gray dissents.  A separate opinion will not issue.)
Vacated in part and affirmed as modified in part
Opinion delivered and filed June 2, 2021
[CV06]



---

[1] The Honorable Al Scoggins, Senior Justice of the Tenth Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court.  *See* TEX. GOV'T CODE ANN. §§ 74.003, 75.002, 75.003.