TRANSPORTATION INSURANCE COMPANY, National Fire Insurance Company of Hartford, Valley Forge Insurance Company, and Continental Casualty Company, Appellants,

v.

WH CLEANERS, INCORPORATED, Appellee.

No. 05–10–00654–CV.

Court of Appeals of Texas, Dallas.

June 7, 2012.

Greta Ayn Matzen, Taber Estes Thorne & Carr PLLC, Dallas, TX, Levon G. Hovnatanian, Bruce E. Ramage, Martin, Disiere, Jefferson & Wisdom, L.L.P., Houston, TX, for Appellants.

Werner A. Powers, Charles C. Keeble, Jr., Haynes & Boone, L.L.P., Dallas, TX, for Appellee.

Before Justices BRIDGES, MARTIN RICHTER, and MURPHY.

## OPINION

Opinion By Justice MURPHY.

The issue we must resolve in this declaratory-judgment action is whether the trial court had subject-matter jurisdiction to declare the duties of insurance carriers, once they denied coverage, related to a pending lawsuit against the insured in Indiana. The carriers, Transportation Insurance Company, National Fire Insurance Company of Hartford, Valley Forge Insurance Company, and Continental Casualty Company, appeal the trial court's order granting WH Cleaners, Incorporated's plea to the jurisdiction. We conclude under the circumstances presented that a justiciable controversy exists and the trial court erred by granting WHC's plea to the jurisdiction. We reverse the trial court's order and remand for further proceedings.

## BACKGROUND [1]

WHC is a Texas corporation involved in the dry-cleaning business. Between 1997 and 2003, WHC leased retail space or otherwise controlled the space through subleases in a shopping center in Greenwood, Indiana. In 2006, the owner of the shopping center learned the property was contaminated by various hazardous substances used in dry cleaning. After the Indiana Department of Environmental Management required the owner to investigate and clean up the contamination, the owner filed suit in Indiana against WHC and its former president, Robert Hitch, as well as others that operated dry cleaning businesses in the shopping center; the owner alleged WHC and the other defendants caused the contamination through their business operations and should pay

---

1. The underlying declaratory-judgment action involves multiple parties and insurance policies and contains a complicated history of the relationship among WHC and the other defendants in the Indiana suit. Although an exposition of those facts is necessary to resolve the merits of the declaratory-judgment action, a complete factual background is not relevant here. Rather, we focus on only those facts necessary for our disposition.

for the cleanup. The Indiana action has not yet proceeded to judgment.

The carriers issued various comprehensive general liability insurance policies to WHC and other defendants in the Indiana suit during the relevant time period. By letter dated August 11, 2008, and as required by the policies, WHC[2] told the carriers about the Indiana suit, attached a copy of the complaint, and asserted entitlement "to defense and indemnity of all claims with respect to this property under any and all policies issued by [the carriers]." The letter included the policy number for each policy implicated, including policies issued to other defendants and under which WHC sought coverage as an additional insured. WHC also emphasized that the policies specifically covered "costs of remediation of environmental contamination" because the Indiana Supreme Court had ruled the pollution exclusion in such policies was ambiguous and unenforceable. The letter ended with a request that the carriers contact WHC's counsel "to arrange for payment of the costs of defense, indemnity and possible settlement" of the matter.

The carriers issued a formal response, denying coverage for the environmental cleanup claims asserted in the Indiana suit.[3] Shortly thereafter, the carriers filed the petition for declaratory judgment in Texas against WHC, Hitch, and Bargain Cleaners, Inc.[4] that is the subject of this appeal. The carriers sought a judicial declaration that they had no duty to defend or indemnify WHC and Hitch in the Indiana suit under any of the policies because of the pollution exclusions contained in the policies. The carriers also alleged WHC was not entitled to coverage in the capacity of an additional insured under the other defendants' policies.

WHC and Hitch filed a plea to the jurisdiction and special exceptions in response to the carriers' declaratory-judgment action, challenging the trial court's subject-matter jurisdiction. They argued the carriers were, in effect, seeking "a declaration that their denial of coverage to [WHC and Hitch] was not a breach of their insurance contract" and such a determination is not a proper subject of a declaratory judgment. They also claimed the carriers' request for declaratory relief with respect to their duty to indemnify "fails to present a justiciable controversy."

The trial court sustained WHC's plea to the jurisdiction and signed an order dismissing the carriers' claims against WHC; Hitch was non-suited from the case before the trial court issued its ruling. The trial court also granted a motion to sever the claims asserted against WHC from those against Bargain and signed a judgment in May 2010 in favor of WHC in the severed action.[5]

---

**2.** The letter was written by counsel for WHC, Hitch, and Coaster Management, Inc., all defendants in the Indiana suit. For simplicity and because WHC is the only appellant before the Court, we reference only WHC.

**3.** The letter denying coverage is not included in the record before us. WHC asserts, and the carriers do not dispute, that the letter was dated February 25, 2009. There is also no dispute that the letter indicated the carriers were denying coverage for the claims brought against WHC in the Indiana suit.

**4.** Bargain, a Texas corporation, is a defendant in the Indiana suit but is not a party to this appeal.

**5.** Although the judgment recites that the carriers "take nothing" against WHC, no party asserts the judgment adjudges anything other than the finality of the order sustaining WHC's plea to the jurisdiction and dismissing the carriers' declaratory-judgment claims without prejudice.

## DISCUSSION

The carriers challenge the trial court's order sustaining WHC's plea to the jurisdiction. The carriers list four "issues" on appeal, yet the questions presented are sub-parts of the first issue of whether the trial court erred in granting WHC's plea to the jurisdiction based on lack of subject-matter jurisdiction. We address that issue.

### Legal Standards & Applicable Law

Subject-matter jurisdiction is essential to a trial court's power to decide a case and may be challenged by a plea to the jurisdiction. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 553–54 (Tex.2000). The question of whether a trial court has subject-matter jurisdiction is one of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004); *Noell v. Air Park Homeowners Ass'n, Inc.,* 246 S.W.3d 827, 831 (Tex.App.-Dallas 2008, pet. denied). The plaintiff bears the burden to plead facts affirmatively demonstrating the court's jurisdiction to hear the case. *Miranda,* 133 S.W.3d at 226 (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993)). When reviewing a trial court's order dismissing a case for lack of jurisdiction, we liberally construe the plaintiff's pleadings in favor of jurisdiction, and we look to the plaintiff's intent. *Tex. Ass'n of Bus.,* 852 S.W.2d at 446.

■ The Texas Uniform Declaratory Judgments Act gives Texas courts the power to "declare rights, status, and other legal relations whether or not further relief is or could be claimed." TEX. CIV. PRAC. & REM.CODE ANN. § 37.003(a) (West 2008). The Act is a remedial statute, the purpose of which is to settle and afford relief from uncertainty and insecurity with respect to those matters, and is to be liberally construed and administered. *Id.* § 37.002(b); *Bonham State Bank v. Beadle,* 907 S.W.2d 465, 467 (Tex.1995); *Cobb v. Harrington,* 144 Tex. 360, 190 S.W.2d 709, 713 (1945) (declaratory-judgment action is "an instrumentality to be wielded in the interest of preventative justice and its scope should be kept wide and liberal, and should not be hedged about by technicalities").

■ The Act does not create or augment a trial court's subject-matter jurisdiction—it is "merely a procedural device for deciding cases already within a court's jurisdiction." *Tex. Ass'n of Bus.,* 852 S.W.2d at 444. A declaratory-judgment action will lie within the trial court's subject-matter jurisdiction when a justiciable controversy exists as to the rights and status of the parties before the court for adjudication, and the requested declaration will actually resolve the controversy. *Brooks v. Northglen Ass'n,* 141 S.W.3d 158, 163–64 (Tex.2004); *OAIC Commercial Assets, L.L.C. v. Stonegate Vill., L.P.,* 234 S.W.3d 726, 745 (Tex.App.-Dallas 2007, pet. denied). A justiciable controversy is one in which a real and substantial controversy exists involving a genuine conflict of tangible interest and not merely a theoretical dispute. *Bonham State Bank,* 907 S.W.2d at 467; *Trinity Universal Ins. Co. v. Sweatt,* 978 S.W.2d 267, 270 (Tex.App.-Fort Worth 1998, no. pet.) (justiciable controversy is "real controversy between the parties that will be actually determined by the judicial declaration sought"). A justiciable controversy is to be distinguished from an advisory opinion, which is prohibited under the Texas and federal constitutions. *Tex. Ass'n of Bus.,* 852 S.W.2d at 444. If a justiciable controversy does not exist, the trial court must dismiss the case for lack of subject-matter jurisdiction. *Di Portanova v. Monroe,* 229 S.W.3d 324, 330 (Tex.App.-Houston [1st Dist.] 2006, pet. denied).

■■■ Ripeness is one aspect of justiciability. *See Noell,* 246 S.W.3d at 832 (citing *Perry v. Del Rio,* 66 S.W.3d 239, 249 (Tex.2001)). But a justiciable controversy need not be a "fully ripened cause of action." *Id.* (citing *Tex. Dep't of Pub. Safety v. Moore,* 985 S.W.2d 149, 153 (Tex.App.-Austin 1998, no pet.)). To confer jurisdiction on the trial court, the fact situation must manifest the "ripening seeds of a controversy." *Moore,* 985 S.W.2d at 153–54. Thus, a declaratory-judgment action may include a pending cause of action or threatened litigation in the immediate future that seems unavoidable. *Monk v. Pomberg,* 263 S.W.3d 199, 207 (Tex.App.-Houston [1st Dist.] 2007, no pet.); *Taylor v. State Farm Lloyds, Inc.,* 124 S.W.3d 665, 669 (Tex.App.-Austin 2003, pet. denied) ("[T]here must either be a pending cause of action between the parties or such a clear indication of the extent of the parties' differences that a court may presume one is imminent.").

■ In Texas, the determination of whether a carrier has the responsibility to defend its insured constitutes a justiciable controversy. *See Bituminous Cas. Corp. v. Commercial Standard Ins. Co.,* 639 S.W.2d 25, 26 (Tex.App.-Tyler 1982); *Colony Ins. Co. v. H.R.K., Inc.,* 728 S.W.2d 848, 852 (Tex.App.-Dallas 1987, no writ); *see also MBM Fin. Corp. v. Woodlands Operating Co., L.P.,* 292 S.W.3d 660, 668 (Tex.2009) (noting suit by insurers to declare non-liability under duty-to-defend clause as among most common suits filed under the Act). Likewise, the determination of whether a carrier has a duty to indemnify is justiciable before the underlying suit proceeds to judgment when the same reasons that negate the carrier's duty to defend also negate any possibility the carrier will have to indemnify for any judgment. *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 83 (Tex.1997)

(per curiam); *Collier v. Allstate Cnty. Mut. Ins. Co.,* 64 S.W.3d 54, 62 (Tex.App.-Fort Worth 2001, no pet.).

### Analysis

■ We begin with the statute and look to the carriers' petition for declaratory judgment to determine whether they pleaded a controversy within the scope of the Act. *See Miranda,* 133 S.W.3d at 226. Under the Act, any "person interested" under a written contract "may have determined any question of construction or validity" arising under that contract and "obtain a declaration of rights, status, or other legal relations thereunder." Tex. Civ. Prac. & Rem.Code Ann. § 37.004(a); *cf. Trinity Universal Ins. Co.,* 978 S.W.2d at 271 ("Construction and validity of contracts are the most obvious and common uses of the declaratory judgment action."); *Barnett v. Aetna Life Ins. Co.,* 723 S.W.2d 663, 665 (Tex.1987) (insurance policies are contracts). The contract may be construed before or after the breach, Tex. Civ. Prac. & Rem.Code Ann. § 37.004(b), and the Act contemplates declarations that are negative (non-liability) and affirmative (liability). *Id.* § 37.003(b).

The carriers alleged that they issued liability coverage policies to WHC and the other defendants in the Indiana suit. They pleaded WHC notified them of the Indiana suit in the August 2008 letter and "asserted [it was] entitled to coverage as a named insured under certain comprehensive general liability insurance policies that [the carriers] purportedly issued to [WHC] from 1997 to 2001." The carriers further pleaded WHC asserted entitlement to coverage as an "additional insured" under policies issued to the other defendants in the Indiana suit. The carriers stated they "formally denied coverage" and that they are "seeking a judicial declaration that they have no coverage obligation" as to

WHC. In particular, the requested declaration includes construing the "who is an insured" provision in the various policies to determine WHC's status under each policy (as an insured, additional insured, or otherwise), as well as the pollution exclusion to determine if the exclusion precluded coverage.

That the Act allows the carriers to have a trial court declare their rights under the insurance contracts is clear—as parties to those contracts, they are "persons interested" whose rights, status, or other legal relations are affected by the contracts. *See id.* § 37.004(a). The carriers sought to obtain a clarification of those rights and guidance from the court with respect to what they were required to do under the contracts. They specifically asked the court to determine questions of construction as to WHC's status as an insured and the validity of the pollution exclusion under the contracts. Stated more generally, they are asking the trial court to construe certain terms or provisions of the contracts to determine whether they owe WHC a defense or indemnity. The resolution of their questions would serve to remove uncertainties with respect to their legal obligations—WHC notified them expressly the pollution exclusion is unenforceable and demanded a defense and indemnity as an insured and "additional insured" under the policies. *See id.* § 37.002(b) (purpose of

Act is to afford relief from uncertainty and insecurity with respect to rights).

In arguing the trial court lacked jurisdiction to hear this case, WHC does not assert that the carriers' requested relief is not authorized by the terms of the Act. Nor does it deny that courts routinely exercise jurisdiction over declaratory-judgment actions that resolve questions related to a carrier's obligations to defend or indemnify an insured under a policy. Rather, WHC focuses on the fact that the carriers denied coverage to WHC before they sought declaratory relief.[6]

WHC presents essentially three arguments supporting its claim the trial court had no subject-matter jurisdiction because of a lack of justiciable controversy. First, it argues any controversy among the parties was "effectively mooted" when the carriers denied its request for a defense and indemnity. According to WHC, a carrier may not both deny coverage and then sue for a declaration of its rights under the insurance policy. WHC claims these two options are mutually exclusive. It argues that when the carriers denied coverage, they had "no need" to seek declaratory relief because the carriers themselves "had already determined the parties' rights" and therefore faced "no uncertainty or insecurity with respect to [their] rights,

6. WHC attempts to distinguish cases cited by the carriers in which the facts reveal the carriers in those cases also filed declaratory-judgment actions after denying coverage. *See, e.g., Collier,* 64 S.W.3d at 57 ("Upon being sued, [insureds] requested that Allstate provide a defense and indemnify them for any judgment in the suit.... Allstate denied coverage and asserted that it had no duty to defend or indemnify" and filed an action seeking declaratory relief.); *Flores v. Great Am. Ins. Co.,* 401 S.W.2d 690, 692 (Tex.Civ. App.-Waco 1966, writ ref'd n.r.e.) ("Flores gave notice to plaintiff Insurance Company and called upon it to defend the suit. Great

American declined to defend, and filed this case for declaratory judgment that it had no obligation to defend (or pay judgment)."). WHC maintains these cases do not address or hold that "an insurer can properly seek declaratory relief after it denies coverage to its insured" because there was no challenge in those cases to the "insurer's post-denial-of-coverage invocation of the declaratory judgment remedy." This distinction is not helpful to our analysis of whether the specific pleading and circumstances here presented a justiciable controversy invoking the trial court's subject-matter jurisdiction.

status, or legal relations" under the policies.

As support for its contentions, WHC relies on *Drawdy v. Direct General Insurance Company*, 277 Ga. 107, 586 S.E.2d 228 (2003), in which the Georgia Supreme Court precluded a carrier from bringing a declaratory-judgment action after the carrier expressly denied coverage. In *Drawdy*, the insured's nephew was involved in two automobile accidents, one of which killed his passenger. *Id.* at 229. The carrier conducted an investigation, and one month later, sent the insured and the passenger's estate a letter denying all coverage under the policy for the collisions. *Id.* Nearly a year later, the carrier sought a declaration that it had no duty to defend or indemnify the insured or his nephew. *Id.*

The Georgia Supreme Court first framed the question before the court, in part, as "whether an automobile insurer, after expressly denying coverage without qualification or conditions, may bring an action for declaratory judgment to determine its contractual duties to its insured *when no litigation is pending against the insured at the time the declaratory judgment action is filed ....*" *Id.* (emphasis added). The court recited that declaratory relief was not available to a party "merely to test the viability of its defenses" and concluded the carrier was "neither uncertain nor insecure" as to its rights because the carrier had already denied coverage for the claims at issue. *Id.* at 230. When the carrier sought declaratory relief nearly a year after the accident, it had provided its insured with "an unconditional and unqualified denial of coverage" and had done nothing to indicate the question of coverage was still an issue. *Id.* at 230–31.

At the time the carrier in *Drawdy* filed the declaratory-judgment action, no lawsuit had been filed by the passenger's estate and no demand for coverage had been made by the insured. Even though the estate eventually filed suit against the insured, no facts were presented indicating the insured had presented the claim to the carrier or that he intended to rely on the carrier for coverage. The insured took no position whatsoever on coverage. Thus, the facts of *Drawdy* reveal there was no real dispute between the carrier and its insured requiring direction from the court. Significantly, the Georgia Declaratory Judgment Act has no direct corollary to the Texas Act's provision permitting any person interested under a "written contract" to seek a declaration to resolve questions related to the construction or validity of that contract. *Compare* GA. CODE ANN. §§ 9–4–1 to –10, *with* TEX. CIV. PRAC. & REM.CODE ANN. § 37.004(a). Consequently, WHC's reliance on *Drawdy* is not persuasive.

Just because a carrier takes a position and denies coverage to an insured does not mean there is no coverage and that the matter has been resolved. A court can determine otherwise. And uncertainty can exist with respect to the parties' rights or duties regarding coverage, especially when the parties take adverse positions on a carrier's obligations under an insurance contract. *See Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 242, 57 S.Ct. 461, 81 L.Ed. 617 (1937) (concluding controversy existed warranting declaratory judgment when carrier denied insured's claim but insured had yet to file coverage dispute because parties took opposing positions as to existing obligations before suit filed); *see also J.E.M. v. Fid. & Cas. Co. of N.Y.*, 928 S.W.2d 668, 671 (Tex.App.-Houston [1st Dist.] 1996, no writ) (Act is intended "as a means for determining the rights of parties when a controversy has arisen").

■ Under the Texas Act, either party may seek declaratory relief if there is a question regarding rights, status, or other legal relations arising under a written contract. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.004(a). If WHC had filed the declaratory-judgment suit instead of the carriers after the carriers' denial, there would be no question that the controversy is of a justiciable nature. The inquiry is "essentially the same" whether it is presented by the insured or the carrier. *See Haworth*, 300 U.S. at 244, 57 S.Ct. 461 (stating it is "the nature of the controversy, not the method of its presentation or the particular party who presents it, that is determinative"). And a declaration of rights under the circumstances presented has practical consequences. For example, if the trial court made declarations in WHC's favor, the carriers would have to change course and provide WHC with a defense. If the trial court made declarations in the carriers' favor, the carriers would be relieved of any requirement that they maintain a reserve with respect to those policies. *See id.* at 239, 57 S.Ct. 461.

■ Of course, the Act does not constitute "an open-ended invitation to parties seeking interpretation of their contracts." *Paulsen v. Tex. Equal Access to Justice Found.*, 23 S.W.3d 42, 46 (Tex.App.-Austin 1999, pet. denied). Although the status of the parties' differences need not have reached the state of an actual controversy, a justiciable controversy within the trial court's jurisdiction requires an indication of ripeness to the extent the trial court may presume a cause of action is imminent or unavoidable as indicated by the parties' differences over the insurance contract. *Taylor*, 124 S.W.3d at 669.

WHC's second contention focuses on the imminence of a cause of action, and it argues there is no imminent disagreement among the parties because it was not going to contest the carriers' denial of coverage. In oral argument, WHC characterized its August 2008 letter in which it asserted entitlement to a defense and indemnity (and cited a ruling from the Indiana Supreme Court that the pollution exclusion is unenforceable) as mere tender of a lawsuit as required under its policies. WHC claims that in the absence of a showing that it threatened the carriers with litigation or otherwise disputed the carriers' coverage denial, such tender cannot constitute a justiciable controversy.

The only record support for WHC's claim it does not intend to contest the denial of coverage is counsel's statement in a response to the carriers' motion to compel that WHC "simply does not have the funds available to it to fight the deep-pocketed" carriers and "is willing to enter a mutually acceptable agreed judgment to the effect that it is not entitled to coverage for the underlying suit." But the record contains no formal withdrawal of WHC's request for a defense and indemnity, no agreement that it was not entitled to coverage under any of the policies, no waiver, concession, or settlement of the claims, or anything else to indicate WHC had changed or relinquished its position of entitlement and demand for coverage as stated in its August 2008 letter. And in oral argument, WHC admitted it had not done anything to establish it was not contesting coverage. We decline to make the existence of a justiciable controversy dependent on the subjective state of mind and intention of one party. It is enough that WHC took the position it is entitled to defense costs and indemnity and the carriers disputed that position for a justiciable controversy to exist. *See Haworth*, 300 U.S. at 242, 57 S.Ct. 461.

Finally, WHC argues the trial court had no jurisdiction to render a declaratory

judgment because after the carriers denied coverage, the "only thing" left for the trial court to declare was whether that denial constituted a breach of the insurance contracts. WHC claims such a declaration is improper. This argument also is not persuasive. Contrary to WHC's assertion, the carriers asked the trial court to construe certain provisions of the insurance contract and determine WHC's rights and the carriers' duties in the context of the Indiana suit; the carriers asked the trial court to determine whether WHC was an insured or additional insured and whether the pollution exclusion applied. The petition for declaratory judgment contains no request to have the trial court determine whether the carriers breached any terms of the insurance contracts.

## CONCLUSION

After considering the carriers' allegations for declaratory relief and the arguments of the parties, we conclude the trial court was presented with a real controversy among the parties involving a genuine conflict of tangible interest that was within the scope of the Act. *See Bonham State Bank*, 907 S.W.2d at 467; *Trinity Universal Ins. Co.*, 978 S.W.2d at 270. Specifically, the carriers' request for the court to determine whether it owed WHC a defense in the Indiana suit is a justiciable issue. *See Bituminous Cas. Corp.*, 639 S.W.2d at 26. And because the same provisions (the "who is an insured" provision and pollution exclusion) the carriers claim negate their duty to defend would also negate the possibility they will have to indemnify WHC for any judgment, the question of whether the carriers owe WHC a duty to indemnify is also a justiciable issue for declaratory relief. *See Griffin*, 955 S.W.2d at 83. Consequently, the trial court had subject-matter jurisdiction over this case, and the trial court erred when it sustained WHC's plea to the jurisdiction

and dismissed the action. We sustain the carriers' issue. We reverse the trial court's judgment and remand this case for further proceedings.

