**Reverse and Remand and Opinion Filed February 20, 2024**



In The
# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-22-00842-CV

**LONGHORN CREEK LTD., Appellant**
**V.**
**GARDENS OF CONNEMARA LTD. AND EMERSON FARM COMPANY, LTD., Appellees**

**On Appeal from the 429th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 429-00851-2022**

## OPINION

Before Chief Justice Burns, Justice Molberg, and Justice Carlyle
Opinion by Justice Molberg

This appeal concerns the granting of appellees Gardens of Connemara Ltd. and Emerson Farm Company, Ltd.'s rule 91a motion to dismiss appellant Longhorn Creek Ltd.'s declaratory judgment action. Longhorn Creek argues the trial court erred in granting the rule 91a motion because its claim for declaratory relief had a basis in fact and law. Because we agree, we reverse and remand.

## I.    Background

Longhorn Creek filed suit on February 21, 2022. It alleged Connemara and Emerson filed a conservation easement assessment agreement and declaration

providing for a "private transfer fee" of one percent of the value of conveyed land for all land covered by the agreement. Longhorn Creek alleged the fee applied to any conveyance, including granting, selling, assigning, and transferring any possessory interest or estate in the land. Longhorn Creek alleged it owned property that Connemara and Emerson claimed was subject to the private transfer fee obligation. It sought a declaration it was not obligated to pay the private transfer fee because (1) Connemara and Emerson had failed to file statutorily compliant notices pursuant to Texas Property Code § 5.203, (2) Connemara and Emerson waived the fee obligation based on subsequent amendments to the assessment agreement and releases of multiple parties from their transfer fee obligations, (3) the private transfer fee covenant does not touch and concern the property, and (4) the private transfer fee is ineffective or void as to the property.

On May 16, 2022, Connemara and Emerson filed a rule 91a motion to dismiss, arguing Longhorn Creek's claim had no basis in law or fact.

On June 16, 2022, Longhorn Creek filed an amended petition for declaratory relief. Longhorn Creek alleged that, in 2005, Connemara, Emerson, and two other entities[1] entered into a written agreement titled, "Conservation Easement Assessment Agreement and Declaration," which Connemara filed in the real property records of Collin County. Longhorn Creek attached a copy of the

---

[1] The other two entities are Montgomery Farm Company and Bethany Corner, Ltd. We will hereinafter refer solely to the two appellees before us, Connemara and Emerson.

–2–

assessment agreement to its amended petition as Exhibit A. The assessment agreement, among other things, required the payment of a fee equal to one percent of the value of conveyed land ("private transfer fee" or "fee") for all land covered by the agreement. Longhorn Creek alleged the fee purported to last in perpetuity, burdening all subsequent purchases of land covered by the assessment agreement. On its face, Longhorn Creek alleged, the private transfer fee sought to "encumber and extract value ad nauseam from all transactions involving a transfer of the 'bundle of rights' inherent to both residential and commercial sales, as well as leases and inheritances."

Longhorn Creek alleged it purchased property[2] in Allen, Texas, in February 2021, and Connemara and Emerson claimed the property was subject to the private transfer fee obligation.

Longhorn Creek alleged the assessment agreement had been amended numerous times. It alleged multiple parties had secured "partial releases" whereby the party paid a one-time 1.1 percent fee at sale instead of paying one percent transfer fees on all subsequent leases of the property. Longhorn Creek here cited exhibits B-1 through B-11, "true and correct copies of the amendments and releases," attached to its amended petition. For example, Longhorn Creek alleged Connemara and Emerson released certain residential properties on December 11, 2019, from the

_____

[2] The amended petition stated the description of the property as "WATTERS CREEK AT MONTGOMERY FARM PHASE 1, BLK A, LOT 3R-1A."

assessment agreement obligations, and that Connemara and Emerson had not collected any fees on residential property sales since that date.

Longhorn Creek next discussed in its amended petition the passage in 2011 of legislation relating to private transfer fees. The legislature adopted Chapter 5, Subchapter G, of the Texas Property Code to regulate private transfer fees.[3] The legislation made private transfer fee obligations created on or after June 17, 2011, void and unenforceable against a subsequent owner or purchaser of real property. TEX. PROP. CODE § 5.202(a). Fee obligations created before then were made subject to strict notice requirements, which the parties agree must be strictly complied with or else the obligations may become void. A person receiving such a private transfer fee is required to file a notice of the private transfer fee obligation in the real property records of the county in which it is located. *Id.* § 5.203(a). The notice is required to (1) be printed in at least fourteen-point boldface type; (2) state the amount of the fee and any method of determination; (3) state the date or any circumstance under which the fee obligation expires, if any; (4) state the purpose for which the money from the fee obligation is to be used; (5) state the name of each payee and each payee's contact information; (6) state the name and address of the payee of record to whom the

---

[3] The Code defines "private transfer fee" as "an amount of money, regardless of the method of determining the amount, that is payable on the transfer of an interest in real property or payable for a right to make or accept a transfer." TEX. PROP. CODE § 5.201(4). "Private transfer fee obligation" means an obligation to pay a private transfer fee created under "(A) a declaration or other covenant recorded in the real property records in the county in which the property subject to the private transfer fee obligation is located; (B) a contractual agreement or promise; or (C) an unrecorded contractual agreement or promise." *Id.* § 5.201(5).

—4—

payment of the fee must be sent; (7) include the acknowledged signature of each payee or authorized representative of each payee; and (8) state the legal description of the property subject to the private transfer fee. *Id.* § 5.203(c). Additionally, a person required to file a notice of a private transfer fee obligation must refile the notice every three years thereafter. *See id.* § 5.203(d). Failure to comply with these "strict notice requirements" subjects the party seeking the fee to certain consequences, including the voiding of the private transfer fee obligation. *Id.* § 5.203(f). Longhorn Creek attached an attorney general's opinion discussing these provisions as Exhibit C.[4]

Longhorn Creek alleged Connemara and Emerson filed its § 5.203 notice in 2012 and refiled it in 2015, 2018, and 2021, and it attached copies of the notices to its amended petition as exhibits D through G. It alleged Connemara and Emerson's notices failed to adhere to the statutory requirement of stating the legal description of the property subject to the private transfer fee obligation and failed to provide the legal description of the property in at least fourteen-point boldface type. Instead, Longhorn Creek alleged Connemara and Emerson "simply pointed to exhibits to provide the description of the property subject to the private transfer fee." Longhorn Creek also alleged Connemara and Emerson stated they had unfettered discretion to

---

[4] Tex. Att'y Gen. Op. No. KP-0195 at 2 (2018) (stating, *inter alia*, that, if the payee of a private transfer fee obligation fails to comply with the notice requirements under § 5.203 of the property code, the private transfer fee obligation is void, and the property is not subject to further obligation under the private transfer fee obligation).

determine the purpose for which the money acquired from the fee would be used and that they failed to use all of the funds exclusively for the purposes set out in the assessment agreement and notices. Longhorn Creek alleged the notice stated:

> As the purpose for which the money from the private transfer fee obligation will be used is not prescribed or limited by the Assessment Agreement or otherwise, the payee of the private transfer fee will determine the purpose for which the money from the private transfer fee obligation will be used. However, the current intended use of the money from the private transfer fee obligation includes the maintenance and improvement of the Conservation Land.

Longhorn Creek alleged the notice referred parties seeking to identify the property subject to the notice to "four exhibits found in the agreement." The subsequent notices refiled at three-year intervals, Longhorn Creek alleged, "simply incorporated the 2012 notice and consequently failed to include a statutorily sufficient property description that satisfied the strict requirements prescribed in section 5.203."

Longhorn Creek alleged Connemara and Emerson failed to adhere to the statutory notice requirements when they amended the assessment agreement and released multiple parties, allowing them to circumvent the fee obligation. Despite these releases, Longhorn Creek alleged Connemara and Emerson subsequently filed notices of the private transfer fee obligation, maintaining that the property continued to be subject to the obligation.

Longhorn Creek alleged it was interested in selling or leasing some or all of its property and that a justiciable controversy existed between it and Connemara and Emerson regarding whether the property was subject to the private transfer fee

–6–

obligation. Longhorn Creek alleged the declaration it was requesting would resolve the controversy between the parties. Longhorn Creek sought the following declarations: (1) there is no obligation to pay the private transfer fee, as Connemara and Emerson's notice and subsequent notices were statutorily noncompliant; (2) Connemara and Emerson waived the private transfer fee obligation based on the subsequent amendments to the assessment agreement and partial releases of multiple parties from their private transfer fee obligations; (3) Connemara and Emerson's private transfer fee covenant did not touch and concern the property; (4) Connemara and Emerson's failure to use the fees collected to benefit the conservancy rendered the private transfer fee void; and (5) the private transfer fee was ineffective and/or void as to Longhorn Creek's property. Longhorn Creek also sought attorney's fees under § 37.009 of the civil practice and remedies code.

On June 22, 2022, Connemara and Emerson filed an amended rule 91a motion to dismiss, arguing Longhorn Creek's cause of action had no basis in law or fact. They argued the notices of the private transfer fee obligation were in fourteen-point boldface type and referenced the volume and page numbers of the Collin County real property records where the assessment agreement could be found. Thus, they argued, the notices provided the legal description of the encumbered properties by reference. Connemara and Emerson also argued that releasing other parties from their private transfer fee obligations does not mean they waived their right to enforce the private transfer fee against Longhorn Creek. Finally, they argued § 5.203 trumps

the "touch and concern" common law principles raised by Longhorn Creek. Connemara and Emerson sought reasonable and necessary attorney's fees pursuant to rule 91a.

The trial court heard Connemara and Emerson's amended motion to dismiss on July 21, 2022, and granted the motion, finding that Longhorn Creek's first amended petition failed to state a viable cause of action. Connemara and Emerson subsequently filed an application for attorney's fees. The trial court granted their application and awarded Connemara and Emerson $31,047.50 in attorney's fees, plus conditional appellate fees. This appeal followed.

## II. Discussion

### A. Applicable law

Texas Rule of Civil Procedure 91a provides in pertinent part as follows:

**91a.1 Motion and Grounds.** Except in a case brought under the Family Code or a case governed by Chapter 14 of the Texas Civil Practice and Remedies Code, a party may move to dismiss a cause of action on the grounds that it has no basis in law or fact. A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought. A cause of action has no basis in fact if no reasonable person could believe the facts pleaded.

**91a.2 Contents of Motion.** A motion to dismiss must state that it is made pursuant to this rule, must identify each cause of action to which it is addressed, and must state specifically the reasons the cause of action has no basis in law, no basis in fact, or both.

. . . .

> **91a.6 Hearing; No Evidence Considered.** Each party is entitled to at least 14 days' notice of the hearing on the motion to dismiss. The court may, but is not required to, conduct an oral hearing on the motion. Except as required by 91a.7, the court may not consider evidence in ruling on the motion and must decide the motion based solely on the pleading of the cause of action, together with any pleading exhibits permitted by Rule 59.

TEX. R. CIV. P. 91a.1, .2, .6.

We review the merits of a rule 91a ruling de novo. *In re Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 266 (Tex. 2021) (orig. proceeding). Whether a defendant is entitled to dismissal under the facts alleged is a legal question. *Id.*

Because rule 91a provides a harsh remedy, we strictly construe the rule's requirements. *Bedford Internet Off. Space, LLC v. Tex. Ins. Grp., Inc.*, 537 S.W.3d 717, 720 (Tex. App.—Fort Worth 2017, pet. dism'd); *see also Renate Nixdorf GmbH & Co. KG v. TRA Midland Props., LLC*, No. 05-17-00577-CV, 2019 WL 92038, at *10 (Tex. App.—Dallas Jan. 3, 2019, pet. denied) (mem. op.). The rule is not a substitute for special exception practice under rule 91 or summary judgment practice under rule 166a, "both of which come with protective features against precipitate summary dispositions on the merits." *Long v. Long*, 681 S.W.3d 805, 816 (Tex. App.—Dallas 2023, no pet. h.); *Davis v. Homeowners of Am. Ins. Co.*, No. 05-21-00092-CV, 2023 WL 3735115, at *2 (Tex. App.—Dallas May 31, 2023, no pet.); *Royale v. Knightvest Mgmt., LLC*, No. 05-18-00908-CV, 2019 WL 4126600, at *4 (Tex. App.—Dallas Aug. 30, 2019, no pet.) (mem. op.).

–9–

When an order granting a rule 91a motion to dismiss does not specify the grounds for dismissal, an appellant seeking reversal of a rule 91a dismissal must negate the validity of each ground on which the trial court could have relied in granting the dismissal. *Lopez v. Sunstate Equip. Co. LLC*, No. 05-21-00100-CV, 2022 WL 3714496, at *5 (Tex. App.—Dallas Aug. 29, 2022, pet. abated) (mem. op.); *Buholtz v. Gibbs*, No. 05-18-00957-CV, 2019 WL 3940973, at *3 (Tex. App.—Dallas Aug. 21, 2019, pet. denied) (mem. op.).

A cause of action has no basis in fact "if no reasonable person could believe the facts pleaded." TEX. R. CIV. P. 91a.1. This prong of rule 91a relates to the believability of the facts alleged by a plaintiff in pleading a cause of action and, thus, "seldom rises to a point of contention in the case law." *Davis*, 2023 WL 3735115, at *2. The Supreme Court of Texas has acknowledged that the "no basis in fact" prong is a "factual-plausibility standard." *See City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016) (per curiam). We do not consider whether the allegations "are likely, or even if the conduct alleged is outlandish, but only if a reasonable person could believe the alleged conduct." *Drake v. Walker*, No. 05-14-00355-CV, 2015 WL 2160565, at *3 (Tex. App.—Dallas May 8, 2015, no pet.) (mem. op.).

A cause of action alleged by a claimant has no basis in law "if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." TEX. R. CIV. P. 91a.1. At the outset, "[t]o determine whether dismissal under rule 91a is required in this case, we apply the

–10–

fair-notice pleading standard applicable in Texas to determine whether the allegations of the petition are sufficient to allege a cause of action." *Thomas v. 462 Thomas Fam. Props., LP*, 559 S.W.3d 634, 639 (Tex. App.—Dallas 2018, pet. denied). In *Thomas*, we stated:

> Our procedural rules merely require that the pleadings provide fair notice of the claim and the relief sought such that the opposing party can prepare a defense. A petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim. Even the omission of an element is not fatal if the cause of action may be reasonably inferred from what is specifically stated. Under this standard, courts assess whether an opposing party can ascertain from the pleading the nature of the controversy, its basic issues, and the type of evidence that might be relevant.

*Id.* at 639–40 (cleaned up).

Ordinarily, when there is a lack of fair notice or other insufficiency in a pleading, a complaining party is required to invoke special exception practice under rules 90 and 91. *See* TEX. R. CIV. P. 90 (curable pleading defects must be pointed out by timely exception, otherwise the defect is waived); TEX. R. CIV. P. 91 ("A special exception shall not only point out the particular pleading excepted to, but it shall also point out intelligibly and with particularity the defect, omission, obscurity, duplicity, generality, or other insufficiency in the allegations in the pleading excepted to.").

In applying the fair-notice pleading standard to our review in a rule 91a context, "we must construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept as true the factual allegations in the pleadings to determine if the cause of action has a basis in law or fact." *In re RNDC Tex., LLC*,

No. 05-18-00555-CV, 2018 WL 2773262, at *1 (Tex. App.—Dallas June 11, 2018, no pet.) (mem. op.). "[I]f nothing in the pleading itself triggers a clear legal bar to the claim, then there is a basis in law and the motion should be denied." *Id.*

Typically, there are two circumstances in which a court may determine that a cause of action has no basis in law under rule 91a: (1) where the plaintiff fails to plead a legally cognizable cause of action, or (2) where the allegations in the plaintiff's own pleading establish a complete legal bar to the plaintiff's claims by affirmatively negating entitlement to the relief requested. *See Long*, 681 S.W.3d at 817–18; *Reaves v. City of Corpus Christi*, 518 S.W.3d 594, 608 (Tex. App.—Corpus Christi–Edinburg 2017, no pet.); *see also In re Shire PLC*, 633 S.W.3d 1, 18 (Tex. App.—Texarkana 2021, orig. proceeding [mand. denied]) (review of Texas Supreme Court cases reveals the defendant must establish the plaintiff's claims are "foreclose[d] as a matter of law" because either "(1) the causes of action in the petition are not recognized by Texas law or (2) the causes of action are recognized, but the plaintiff has alleged facts that defeat those claims under settled law (i.e., the plaintiff has pleaded itself out of court)"). Further, as the supreme court stated recently, "[a] cause of action has no basis in law under Rule 91a if it is barred by an established legal rule and the plaintiff has failed to plead facts demonstrating that the rule does not apply." *In re First Rsrv. Mgmt., L.P.*, 671 S.W.3d 653, 661 (Tex. 2023) (orig. proceeding).

In ruling on the rule 91a motion, except as required by rule 91a.7, which relates to attorney's fees and is not at issue here, a court may not consider evidence and must decide the motion based solely on the pleading of the cause of action, together with any pleading exhibits permitted by rule 59. Tex. R. Civ. P. 91a.6. Rule 59 permits as "pleading exhibits" only "[n]otes, accounts, bonds, mortgages, records, and all other written instruments, constituting, in whole or in part, the claim sued on, or the matter set up in defense." Tex. R. Civ. P. 59. Because "[n]o other instrument of writing shall be made an exhibit in the pleading," *id.*, rule 91a permits consideration of only a "narrow class of exhibits" in addition to the pleading of the cause of action. *See Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 654 (Tex. 2020). The court may not resort to evidence proffered by the rule 91a movant, such as through affidavits, transcribed testimony, or documents in deciding whether the non-movant's claims enjoy no basis in law. *Davis*, 2023 WL 3735115, at *5 n.6. Further, as we stated recently in *Davis*:

> Pleading exhibits are not evidence. They are exhibits in aid of, and to factually amplify allegations in, pleadings and, if used, must be incorporated by reference into the pleadings in some manner. In other words, they are viewed as constituting a part of the pleading to which they are attached. In the rule 91a context, only the non-movant's pleading may be looked to when determining whether the cause of action pleaded has a basis in law. Thus, rule 59 exhibits attached to the non-movant's pleading may be considered in the quest to determine whether the cause of action has a legal basis. In contrast, a court may consider a movant's pleading only to determine whether an affirmative defense has been properly raised in the pleading of the movant. Rule 59 hardly grants carte blanche to litigants to attach unauthenticated, hearsay, unduly prejudicial, or other traditionally objectionable

–13–

documents to pleadings and have them considered as "evidence" in the traditional sense. Rule 59 pleading exhibits merely imbue or augment the allegations of the pleading to which they are attached. They gain no talismanic quality by being attached to a pleading and, perforce, they are dispositive of nothing without more. Simply, unless later offered and admitted into evidence, pleading exhibits are not evidence.

*Id.* (internal citations omitted).

## B. Analysis

Longhorn Creek argues on appeal the trial court erred in granting Connemara and Emerson's rule 91a motion to dismiss because its declaratory judgment action has a sufficient basis in law and in fact to proceed. It argues that taking the allegations in its amended petition as true, there is a basis in law and fact for concluding the private transfer fee is void. We agree.

To begin with, we conclude Longhorn Creek's declaratory judgment action has a basis in fact. The amended petition reveals no basis to conclude no reasonable person could believe the facts pleaded.[5] Under rule 91a, "this ends the inquiry." *See Royale*, 2019 WL 4126600, at *7. Thus, to the extent the trial court granted the motion to dismiss on this basis, it was error.

Next we consider whether the trial court erred in dismissing the cause of action because it lacks a basis in law. Under the Uniform Declaratory Judgments Act, a person interested under a written contract or other writing constituting a

---

[5] Moreover, at oral argument, Connemara and Emerson conceded they were no longer arguing the allegations lacked a basis in fact.

contract or whose rights, status, or other legal relations are affected by a contract may have determined any question of construction or validity arising under the contract and obtain a declaration of rights, status, or other legal relations thereunder. TEX. CIV. PRAC. & REM. CODE § 37.004(a). The Act's purpose is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and it is to be liberally construed and administered. *Id.* § 37.002(b). A declaratory judgment action will lie when a justiciable controversy exists as to the rights and status of the parties before the court for adjudication and the requested declaration will actually resolve the controversy. *HMT Tank Serv. LLC v. Am. Tank & Vessel, Inc.*, 565 S.W.3d 799, 808 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *Transp. Ins. Co. v. WH Cleaners, Inc.*, 372 S.W.3d 223, 227 (Tex. App.—Dallas 2012, no pet.).

Longhorn Creek's allegations in the amended petition pleaded a justiciable controversy that would be resolved by the declarations it seeks. Longhorn Creek alleged Connemara and Emerson were the beneficiaries of a private transfer fee obligation created in 2005 by the assessment agreement that burdened Longhorn Creek's property. Longhorn Creek alleged the § 5.203 notices filed by Connemara and Emerson failed to use an at-least-fourteen-point type and to state the legal description of the property subject to the private transfer fee obligation, and thus, it sought a declaration that the private transfer fee obligation was void. *See* TEX. PROP. CODE § 5.203(f). It alleged and sought a declaration that Connemara and Emerson

–15–

engaged in conduct by amending the assessment agreement and releasing other parties that waived its right to enforce the fee obligation against Longhorn Creek. Finally, Longhorn Creek sought a declaration that the fee obligation did not touch and concern the property, and Connemara and Emerson's failure to use the fees collected to benefit the conservancy rendered the private transfer fee void. Because these declarations would resolve the controversy between the parties, we conclude Longhorn Creek stated a viable declaratory judgment action.

Despite this, Connemara and Emerson argue Longhorn Creek's own allegations establish a complete legal bar to its claims. They argue the notices were printed in fourteen-point boldface type and referenced records that sufficiently described the property subject to the private transfer fee—they rely on the notices attached as pleading exhibits to Longhorn Creek's amended petition for this contention. As stated previously, we may not consider evidence in deciding a rule 91a motion but only the pleading of the cause of action and the narrow class of exhibits permitted by rule 59. TEX. R. CIV. P. 91a.6; *Bethel*, 595 S.W.3d at 654. That narrow class includes "[n]otes, accounts, bonds, mortgages, records, and all other written instruments, constituting, in whole or in part, the claim sued on, or the matter set up in defense." TEX. R. CIV. P. 59. The copies of the notices attached to the amended petition may be important future evidence for some of Longhorn Creek's allegations, but they cannot be said to constitute the claim sued on. *See City of Paris v. Bray*, 175 S.W. 432, 433 (Tex. 1915) (in city's suit to recover amount of

–16–

a paving assessment, a copy of a notice of the paving attached to the petition was "not a written instrument forming in any part the basis of the cause of action for the enforcement of the assessment" even though it was "one of the requirements of the law," and thus was not to be considered in testing the sufficiency of the pleading; instead, the cause of action was "constituted by the debt and lien"—it was "not one founded in whole or in part upon any written instrument, but has its origin in the provisions of law governing the levy of the assessment"). Consequently, we consider only Longhorn Creek's pleading in determining whether the cause of action has any basis in law. Because we must take as true the allegations pleaded in the amended petition, we categorically reject Connemara and Emerson's contention that Longhorn Creek's claim has no basis in law.

Connemara and Emerson also argue the facts alleged by Longhorn Creek cannot constitute waiver of their transfer fee rights as a matter of law. Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *LaLonde v. Gosnell*, 593 S.W.3d 212, 218–19 (Tex. 2019). It is generally "a fact-intensive inquiry involving multiple factors." *BCH Dev., LLC v. Lakeview Heights Addition Prop. Owners' Ass'n*, No. 05-17-01096-CV, 2019 WL 2211479, at *9 (Tex. App.—Dallas May 21, 2019, pet. denied) (mem. op.); *First Interstate Bank of Tex., N.A. v. S.B.F.I., Inc.*, 830 S.W.2d 239, 248 (Tex. App.—Dallas 1992, no pet.). The question before us is not whether Longhorn Creek proved its waiver claim. The question is whether anything in Longhorn Creek's pleading

–17–

triggers a clear legal bar to its claim regarding waiver. *See RNDC Tex.*, 2018 WL 2773262, at *1. Construing the pleading liberally, we cannot conclude this claim is legally impossible. As our sister court articulated in *Shire*, a petition's failure to state sufficient detail regarding the facts upon which a claim is based "is not an argument upon which dismissal can be granted under Rule 91a." *Shire*, 633 S.W.3d at 35.

Connemara and Emerson argue the declarations sought by Longhorn Creek that the private transfer fee covenant does not touch and concern the property and Connemara and Emerson's failure to use the fees collected to benefit the conservancy rendered the private transfer fee void have no basis in law. They argue the adoption of the statutory scheme governing private transfer fees forecloses Longhorn Creek's common law claim. We cannot agree. Our review here is limited to whether Longhorn Creek pleaded facts that defeat its claims under settled law. *See id.* at 18. For a statutory provision to preempt a common law principle or claim, the statute must "directly conflict" with the principle. *See Cash Am. Int'l Inc. v. Bennett*, 35 S.W.3d 12, 16 (Tex. 2000) (noting that abrogating common law claims is "disfavored"). Connemara and Emerson point to nothing in settled law providing that Chapter 5, Subchapter G, directly conflicts with the common law principles[6]

---

[6] In order for a party to enforce an agreement burdening land against a successor to the party with whom he covenanted, the agreement must run with the land. *Wayne Harwell Props. v. Pan Am. Logistics Ctr., Inc.*, 945 S.W.2d 216, 218 (Tex. App.—San Antonio 1997, writ denied). A covenant runs with the land

raised by Longhorn Creek. They point to § 5.202(b)(9), arguing it demonstrates the law of covenants does not apply to private transfer fees. Under that provision, a fee paid to an organization exempt from federal taxation under §§ 501(c)(3)[7] or 501(c)(4)[8] of the Internal Revenue Code of 1986 is not considered a private transfer fee obligation only if the organization uses the payments to directly benefit the encumbered property by: (A) supporting or maintaining only the encumbered property; (B) constructing or repairing improvements only to the encumbered property; or (C) providing activities or infrastructure to support quality of life, including cultural, educational, charitable, recreational, environmental, and conservation activities and infrastructure, that directly benefit the encumbered property. TEX. PROP. CODE § 5.202(b)(9). But this provision does not generally exclude from the meaning of private transfer fee obligations those fees used to benefit the encumbered property in the ways enumerated in the statute—it does so only with respect to certain tax-exempt organizations.

Finally, Connemara and Emerson argue that, because nothing in the property code requires them to use the private transfer fees collected to benefit the conservancy, this cannot be the basis for a declaration voiding the fee obligation.

---

when it, among other things, touches and concerns the land. *Inwood N. Homeowners' Ass'n, Inc. v. Harris*, 736 S.W.2d 632, 635 (Tex. 1987).

[7] 26 U.S.C.A. § 501(c)(3) (relating to charitable, religious, and other organizations organized and operated exclusively for exempt purposes set forth in statute).

[8] 26 U.S.C.A. § 501(c)(4) (relating to non-profit organizations operated exclusively for the promotion of social welfare).

However, construing Longhorn Creek's amended petition liberally, as we must, *see RNDC Tex.*, 2018 WL 2773262, at \*1, we conclude this requested declaration relates to the one immediately preceding it—that the "private transfer fee covenant does not touch and concern the property."

Accordingly, we conclude nothing pleaded by Longhorn Creek triggers a "clear legal bar" to its claim, *see id.*, and the trial court therefore erred in dismissing Longhorn Creek's declaratory judgment action on this basis.

In sum, the issues raised by Connemara and Emerson go beyond a determination of whether the claim as pleaded is baseless under rule 91a standards. *See Weizhong Zheng v. Vacation Network, Inc.*, 468 S.W.3d 180, 185 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). Rule 91a is not a procedure that allows a court to generally weigh the merits of a case. Instead, Connemara and Emerson's argument seems fit for a summary judgment motion in that it asserts that the evidence and authority negate the pleaded facts; thus, they may present their contentions under summary judgment standards. *See id.*; TEX. R. CIV. P. 166a. Failing that, factual issues may be submitted to a trier of fact.

In reversing the trial court's dismissal order, we also vacate the trial court's order granting Connemara and Emerson's application for attorney's fees. *See* TEX. R. CIV. P. 91a.7; *Sanchez v. Striever*, 614 S.W.3d 233, 248 (Tex. App.—Houston [14th Dist.] 2020, no pet.).

–20–

### III. Conclusion

We reverse the trial court's rule 91a dismissal order and vacate the award of attorney's fees and costs. We remand the case to the trial court for further proceedings consistent with this opinion.

220842F.P05

/Ken Molberg/
KEN MOLBERG
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

LONGHORN CREEK LTD.,
Appellant

No. 05-22-00842-CV          V.

GARDENS OF CONNEMARA
LTD. AND EMERSON FARM
COMPANY, LTD., Appellees

On Appeal from the 429th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 429-00851-
2022.
Opinion delivered by Justice
Molberg. Chief Justice Burns and
Justice Carlyle participating.

In accordance with this Court's opinion of this date, the order of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellant LONGHORN CREEK LTD. recover its costs of this appeal from appellees GARDENS OF CONNEMARA LTD. and EMERSON FARM COMPANY, LTD.

Judgment entered this 20th day of February 2024.